(No. 56393.—
(No. 56394.—

WAUKEGAN COMMUNITY UNIT SCHOOL DISTRICT NO. 60 *et al.,* Appellees and Cross-Appellants, v. THE CITY OF WAUKEGAN *et al.,* Appellants and Cross-Appellees.—ILLINOIS BELL TELEPHONE COMPANY, Appellant, v. THE VILLAGE OF OAK PARK *et al.,* Appellees.

*Opinion filed February 8, 1983.—Rehearing denied April 8, 1983.*

Diver, Bollman, Grach, Quade & Lessman, of Waukegan (Robert E. Lessman and Newton E. Finn, of counsel), for appellant and cross-appellee City of Waukegan.

Donald M. Lonchar, Jr., and John G. Radosevich, of Lonchar, Nordigian & Radosevich, of Waukegan, for appellee and cross-appellant Waukegan Community Unit School District No. 60.

The Law Offices of David N. Barkhausen, of Waukegan, for appellee and cross-appellant David N. Barkhausen.

Fred L. Foreman, State's Attorney, of Waukegan (Helen S. Rozenberg, Assistant State's Attorney, of counsel) for appellee and cross-appellant County of Lake.

M. R. Conzelman, of Waukegan, for appellee and cross-appellant North Shore Sanitary District.

Peter B. Freeman, Garland H. Allen, and Michael D. Renner, of Hopkins & Sutter, of Chicago, for appellee and

cross-appellant North Shore Gas Company.

Michael S. Basofin, of Basofin & Webne, of Evanston, and John G. Radosevich, of Lonchar, Nordigian & Radosevich, of Waukegan, for intervenors Bryant H. Prentice III, Leo Gideon, and Donna Keeler.

Lawrence D. Lasky, Richard M. Lipton, and Donald C. Clark, Jr., of Chicago (Isham, Lincoln & Beale, of counsel), for *amicus curiae* Commonwealth Edison Company.

James R. Bryant, Jr., Michael J. Karson, and John T. Lenahan, of Chicago, and Ellis E. Fuqua, of Fuqua, Winter, Wysoki & Stiles, Ltd., of Waukegan, for appellant Illinois Bell Telephone Company.

Arthur C. Thorpe and Sara A. Hanson, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellee Village of Oak Park.

Jack M. Siegel, of Chicago, for appellee City of Evanston.

Ronald M. Glink and Peter M. Rosenthal, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, for appellee Village of Rosemont.

Michael S. Basofin, of Basofin & Webne, of Evanston, and John G. Radosevich, of Lonchar, Nordigian & Radosevich, of Waukegan, for intervenors Bryant H. Prentice III, Leo Gideon, and Donna Keeler.

Lawrence D. Lasky, Richard M. Lipton, and Donald C. Clark, Jr., of Chicago (Isham, Lincoln & Beale, of counsel), for *amicus curiae* Commonwealth Edison Company.

JUSTICE CLARK delivered the opinion of the court:

This case involves the consolidation of two appeals: one arising out of three cases consolidated before the cir-

cuit court of Lake County (hereafter the Waukegan cases: Waukegan Community Unit School District No. 60 *et al.* v. City of Waukegan, 81 MR 266; David N. Barkhausen *et al.* v. City of Waukegan *et al.*, 81 CH 725; County of Lake v. City of Waukegan, 81 CH 729, consolidated before the circuit court of Lake County) and a similar case brought before the circuit court of Cook County (hereafter the Oak Park case: Illinois Bell Telephone Company v. Village of Oak Park, City of Evanston and Village of Rosemont, 82 L 3405, circuit court of Cook County).

Shortly after this court rendered its decision in *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, certain appellants filed suit against the city of Waukegan to have its 5% municipal utility tax on utility companies and its 3% consumer utility tax declared unconstitutional. After a hearing, the circuit court of Lake County held that the 5% utility tax suffered no unconstitutional infirmity, but did hold that the 3% consumer utility tax was unconstitutional based upon this court's decision in *Commercial National Bank*. Both holdings are before this court.

A similar suit was filed by Illinois Bell Telephone against the villages of Oak Park and Rosemont, and the city of Evanston, alleging similar constitutional infirmities with the consumer utility tax ordinances adopted by those communities. The circuit court of Cook County, however, held for the communities and found the ordinances to be constitutional. Both cases are now before this court under Rule 302(b) (73 Ill. 2d R. 302(b)) and were consolidated on March 27, 1982.

In the Oak Park case plaintiff-appellant Illinois Bell Telephone Company (hereafter Illinois Bell) brought a declaratory judgment action challenging the constitutionality of the various tax ordinances enacted by the municipalities of Oak Park, Evanston and Rosemont. Each mu-

nicipality filed a motion to dismiss for failure to state a cause of action.

On March 19, 1982, the circuit court of Cook County granted the defendants' motion to dismiss. Illinois Bell elected to stand on its complaint and appeals from the order of dismissal. Illinois Bell contends that the home rule taxes at issue are prohibited by article VII, section 6(e), of the 1970 Constitution and that the defendants should be permanently enjoined from imposing or enforcing these taxes.

Pursuant to Supreme Court Rule 302(b) we ordered a direct appeal, and we consolidated this case with the cases arising out of Lake County.

On March 31, 1982, by an order of this court Bryant H. Prentice and Leo Gideon of Evanston, and Donna Keeler of Oak Park were permitted to intervene. Each of the forementioned parties are persons who have used and continue to use public utilities in these respective municipalities. Prentice, Gideon and Keeler had challenged the validity of the Evanston and Oak Park taxes in a separate class action suit. Their petition to intervene had previously been denied by the circuit court.

The other actions consolidated in this appeal challenge the constitutionality of Waukegan's "consumer utility tax," which is substantially identical to utility taxes enacted by Oak Park, Evanston and Rosemont.

In addition to challenging Waukegan's consumer utility tax, plaintiffs North Shore Sanitary District, Waukegan Community Unit School District No. 60 (hereafter School District No. 60) and the County of Lake (collectively "plaintiff local government units") separately challenged the Waukegan municipal utility tax imposed by Waukegan upon the utilities pursuant to section 8—11—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 8—11—2). The plaintiff local government units alleged that the Waukegan municipal utility tax imper-

missibly regulates and taxes their affairs.

By an order entered May 5, 1982, *nunc pro tunc* as of March 10, 1982, the Lake County circuit court held that the Waukegan consumer utility tax is an unauthorized tax upon occupations prohibited by article VII, section 6(e)(2), of the Illinois Constitution of 1970, but that the Waukegan municipal utility tax is a validly authorized and constitutional ordinance and does not regulate or tax the affairs or property of the plaintiff local government units. The court enjoined the utilities from further billing of the consumer utility tax, required the utilities to remit all collected consumer utility taxes to the city of Waukegan (to be held *pendente lite* in a special protest fund), and ordered Waukegan to refund the protest fund, together with any interest earned on the protest fund, to the utilites to be credited against their existing customer accounts. The court further ordered that the utilities keep and maintain all documents, records and information necessary for such a refund in the same manner as they have been kept in the ordinary course of business.

On March 15, 1982, Waukegan appealed from that portion of the circuit court's order finding that 3% consumer utility tax to be unconstitutional. On March 22, 1982, the North Shore Sanitary District filed a notice of cross-appeal seeking reversal of various portions of the March 10 order, including the dismissal of the sanitary district's complaint challenging the constitutionality of the Waukegan municipal utility tax and the court's findings that the Waukegan tax is duly authorized and valid and neither regulates nor taxes the affairs or property of the plaintiff local government units. On March 26, 1982, the County of Lake filed a notice of cross-appeal on the same issues. School District No. 60 filed a notice of cross-appeal on March 23, 1982, on the same issues and added a challenge to the refund provision contained

in the March 10 order. On March 23, 1982, plaintiff cross-appellant David Barkhausen filed a notice of cross-appeal objecting to the refund mechanism established by the court, the record-keeping duties imposed on the utilities, and the failure to require utilities to pay interest on their collection of consumer taxes, as well as the consumer taxes themselves, into the protest fund. Barkhausen further requested this court to direct the circuit court to certify an alleged class and to accept Barkhausen as representative plaintiff for that class.

We first address the issue of whether the imposition of the "consumer utility tax" by the defendant municipalities (the city of Waukegan, the village of Oak Park *et al.*) is a valid exercise of home rule powers or is an invalid and impermissible occupations tax in violation of section 6(e) of article VII of the 1970 Illinois Constitution (Ill. Const. 1970, art. VII, sec. 6(e)).

The claims of the defendants that the "consumer utility taxes" at issue are not occupation taxes are in direct conflict with this court's decision in *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45 (hereinafter referred to as *Commercial National Bank*).

The holding in *Commercial National Bank,* which the cities of Waukegan and Evanston and the villages of Rosemont and Oak Park seek to avoid here, is squarely applicable in this case because public utilities are engaged in service occupations. We said in *Commercial National Bank* that "it was the consensus of the convention that taxes upon occupations should not be imposed by home rule units unless legislatively authorized and that this limitation was specifically considered in relation to the imposition of taxes on services." (89 Ill. 2d 45, 53.) Our holding in *Commercial National Bank* controls the outcome of this issue in the instant case.

Public utilities are engaged in rendering a service. This court held in *Peoples Gas Light & Coke Co. v. Ames*

(1934), 359 Ill. 152, that the retailers' occupation tax did not apply to public utilities because those corporations are not in the business of selling tangible personal property, but are in the business of providing a public utility service. (See also *Farrand Coal Co. v. Halpin* (1957), 10 Ill. 2d 507; *Automatic Voting Machine Corp. v. Daley* (1951), 409 Ill. 438; *Illinois Bell Telephone Co. v. Ames* (1936), 364 Ill. 362.) An examination of the statute reveals that the defendants' characterization of the consumer utility tax ordinance as a tax on products is contrary to the plain language of this ordinance. The language used in all of the ordinances is very similar. The village of Oak Park ordinance provides in pertinent part:

"[A tax is imposed] on the consumers of goods and services purchased from the following:

A. Persons sending messages by means of electricity at a rate of [____%] of the gross cost of such messages originating within the corporate limits of the [municipality].

B. Persons engaged in the business of distributing, supplying, furnishing or selling gas for use or consumption within the corporate limits of the [municipality] and not for resale at a rate of [____%] of the gross cost thereof."

C. Persons engaged in the business of distributing, supplying, furnishing or selling electricity for use or consumption within the corporate limits of the [municipality] and not for resale at the rate of [____%] the gross cost thereof." (Village of Oak Park Ordinance 1974—0—5, sec. 1 (1974).)

Each of the ordinances provides that the taxes are to be collected from consumers by the public utility providing the service in question and remitted by such utility to the respective municipalities.

Undoubtedly the North Shore Gas Company and Commonwealth Edison Company provide the products of gas and electricity to their respective customers. However,

those products are provided as a part of a service to the utilities customers. The argument of defendants that Illinois Bell provides the product of "message units" is not persuasive. But assuming that the argument is accepted, the message units are also provided as part of telephone service to consumers. That service includes the maintenance of facilities and equipment that allows the customers to use their telephones and light and heat their homes. The term "service," in the context of Illinois tax law, has generally been held to include all "sales" transactions other than sales of tangible property. (See, e.g., *Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189.) It is our conclusion today that in accord with the *Commercial National Bank* holding that article VII, section 6(e), of the 1970 Constitution prohibits all taxes applicable to transactions principally consisting of the sale of "services," the taxes at issue today are taxes on the sale of services and are therefore prohibited.

Waukegan, Oak Park, Evanston and Rosemont claim that the legal incidence of the "consumer utility tax" falls upon the consumers and not the utilities. However, *Commercial National Bank* makes clear that a simple declaration that the legal incidence of the tax is on the consumer is not sufficient to avoid the constitutional restrictions against occupation taxes enacted without express legislative authorization. We said in *Commercial National Bank* that "the practical operation of the entire ordinance, not just the simple declaration that the tax is on the purchaser, must be judged against the intent expressed by the delegates to the constitutional convention in determining whether the tax imposed by the ordinance falls within the proscription of section 6(e) of article VII." (*Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 65.) "The declaration that the tax *** is on the purchaser is *** not consistent with the constitutional restriction on taxes upon occupations but is an attempt to erode, dimin-

ish or evade the intent expressed in the constitutional convention." (89 Ill. 2d 45, 64.) Viewed in their entirety the consumer utility taxes at issue are, in practical operation, attempts to impose a tax upon the services the utilities provide to the general public. Like the city of Chicago in *Commercial National Bank,* Waukegan, Oak Park, Evanston and Rosemont have unsuccessfully "attempted to convert an occupation tax into a tax upon consumers." (89 Ill. 2d 45, 66.) Upon close analysis the only significant difference between the consumer utility taxes at issue here and the 5% utility occupation tax (enacted pursuant to section 8—11—2 of the Illinois Municipal Code) is contained in section 1 of the respective consumer utility ordinances. That section literally places the legal incidence of the tax on the consumers. However, we again recall what we said in *Commercial National Bank:* "[M]agic words" are no longer determinative in analyzing a home rule tax on the sale of services. We recognized in *Commercial National Bank* that "[t]he mere recitation in the ordinance that the tax is upon purchasers of services does not eliminate the evils the delegates to the convention sought to prevent." 89 Ill. 2d 45, 67.

The analysis we articulated in *Commercial National Bank* applies equally to the taxes challenged in this appeal. The home rule ordinances at issue tax services and place all of the responsibility for the tax on the persons engaged in the business of providing those services. The taxes themselves are measured solely by reference to the "gross cost" of the services, which is defined as "consideration paid," *i.e.,* the gross receipts of the utility. No provision is made for the collection of unpaid taxes from the consumer; it is rather the utility that faces the burden of record keeping and the penalty for failing to pay the taxes.

In practical operation the consumer utility taxes at issue are "occupation taxes" within the meaning of article VII, section 6(e), and are prohibited.

MUNICIPAL UTILITY TAX

The school district, the sanitary district and the County of Lake also object to the imposition of both the statutory municipal utility tax as well as the city of Waukegan's consumer utility tax on them. Their objection is that both taxes impermissibly regulate those public corporations. As far as the municipal utility tax is concerned, the assertions of the school district, the sanitary district and the County of Lake that each should be exempt are without merit.

The statutes authorizing the municipal imposition of the municipal utility tax state that the tax is imposed upon the "occupations" of utilities (Ill. Rev. Stat. 1981, ch. 24, par. 8—11—2) and that the economic burden of the tax is recovered by the utilities from their customers, not as taxes, but as "additional charge[s]" for utility service (Ill. Rev. Stat. 1981, ch. 111⅔, par. 36(a)). As utility customers, the plaintiff local government units can claim no tax exemption, since they are not taxpayers. *Commonwealth Edison Co. v. Community Unit School District No. 200* (1976), 44 Ill. App. 3d 665 (hereinafter *Edison*); *Agron v. Illinois Bell Telephone Co.* (7th Cir. 1971), 449 F.2d 906 (hereinafter *Agron*).

The appellate court, in *Edison*, described the rule applicable to a customer school district's claim of exemption:

"[T]axes passed on to exempt bodies in the form of higher prices are not necessarily invalid. [Citations.]

The school district argues that, since the burden of the tax is passed on to it, it is the 'taxpayer,' citing *East St. Louis v. Union Electric Co.* [citation]. It is clear that the incidence of the tax rests on the utilities, even if its burden does not, since if the tax is not paid by the utility, it is the only one from whom the city may seek to collect. (See *Martin Oil Service Inc. v. Department of Revenue*, 49 Ill. 2d 260, 263 (1971).) 'It is the legal incidence of the tax that controls.' (*First National Bank v. Jones* [citations].) Accordingly, it is the utility not the school district which is the taxpayer. The fact that the utility, while not required to, may as a general practice pass the

tax on to the purchaser does not change the character of the tax. (*First National Bank v. Jones* [citation].) Nor does the fact that the subscribers must inevitably provide the money for the payment of the tax through a special charge." (44 Ill. App. 3d 665, 670-71.)

While this court held in *Getto v. City of Chicago* (1979), 77 Ill. 2d 346, that utility customers who had borne the economic burden of the municipal utility tax thereby obtained standing to challenge the validity of that tax, that decision carefully distinguished between the issues of standing and legal incidence, citing with approval the Seventh Circuit Court of Appeals' holding in *Agron* that the municipal utility tax is an "occupation tax" whose legal incidence is upon utilities as a matter of Illinois law. (77 Ill. 2d 346, 354-55.) Such precedent confirms that the plaintiff local government units are required to bear the economic burden of the municipal utility tax, and they have no grounds upon which to assert a taxpayer's exemption from that tax.

Illinois courts have repeatedly held that a tax imposed or expressly authorized by the General Assembly, such as the municipal utility tax, is presumptively and validly applied to local government units, unless the General Assembly has expressly exempted such units by statute or by preemptive legislation. *People v. Deep Rock Oil Corp.* (1931), 343 Ill. 388; see *Board of Education v. City of McHenry* (1979), 71 Ill. App. 3d 904; *cf. Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469.

In *People v. Deep Rock Oil Corp.* (1931), 343 Ill. 388, Deep Rock Oil made a sale of approximately $70,000 of gasoline to the city of Chicago. It did not pay tax due to the State of Illinois under the Motor Fuel Tax Act. Deep Rock Oil argued that the gasoline sold to the city of Chicago was used for municipal purposes and was exempt by law from taxation. The city of Chicago filed an *amicus curiae* brief on behalf of Deep Rock Oil. The court held the tax on the use of gasoline was an excise or privilege tax

and not a property tax. Examining the city's contention that it was exempt from such a tax, the court said:

"In support of the city's second point—*i.e.*, that municipalities are exempt from paying the tax imposed by the Motor Fuel Tax Act—counsel have cited Cooley on Taxation and cases of other jurisdictions adopting the rule that because municipalities are parts of the government and it will not be presumed that the government intended to tax branches of itself, municipalities are exempt unless it specifically appears in the act of the legislature that such taxation was intended. Such is not the rule in this State. Statutes exempting property from taxation must be strictly construed. All presumptions are against the intention of the State to bind itself by exempting property from taxation. [Citations.] This rule applies equally to private persons, private corporations and municipalities. [Citations.] General language imposing a tax applies equally to cities, counties and other municipal corporations, and the property of such municipalities is not exempt unless made so by clear and specific language of the statute. [Citations.] 343 Ill. 388, 400-01.

Chicago and Deep Rock Oil also argued that since the Motor Fuel Tax Act was directed to "persons" it was meant to exclude local governmental entities. In dismissing this argument, the court stated, "It is a sufficient answer to say that by the fifth clause of section 1 of the act relating to construction of statutes, (Smith's Stat. 1929, chap. 131, sec. 1,) the word 'person' or 'persons' may extend and be applied to bodies politic and corporate as well as individuals." 343 Ill. 388, 401.

The General Assembly expressly authorized municipalities to impose the municipal utility tax and did so without exemption or preemption relating to local government units and has enacted a separate statute, section 36(a) of the Public Utilities Act, expressly authorizing utilities to recover their municipal utility tax liabilities from "customers," again without exemption for local government units (Ill. Rev. Stat. 1981, ch. 111²/₃, par. 36(a)).

The power to impose municipal utility taxes has been granted by the Illinois Municipal Code to all Illinois municipalities since 1955. Despite amendments to the municipal utility tax enabling act, the General Assembly has not seen fit to alter the legislative scheme or to create exemptions for local governmental units, all of which are concededly utility customers for purposes of the Public Utilities Act.

The school district's preemption arguments, based on this court's decision in *City of Peoria* and the constitutional duty to provide free schools are irrelevant in this context. The imposition of the municipal utility tax upon utilities, as well as the transfer of the economic burden of that tax to utility customers, has been expressly authorized by the General Assembly. The provision of "free schools" does not entail an exemption from the economic burdens of valid tax legislation. The Constitution does not prohibit the General Assembly from authorizing cities to impose an occupation tax upon utilities, simply because the tax incidentally increases the school district's costs for utility services. In the *Edison* decision, another school district's identical claim to an exemption from the municipal utility tax was rejected on the ground that such taxes are imposed on utilities, not customers. The County of Lake's extraterritorial-effect objection to the tax is also misguided. The appellate court spoke to a similar objection in the *Edison* case.

> "The school district's contention that the ordinance has an unauthorized extraterritorial effect is likewise without merit. The ordinance, which follows the language of the statute, merely taxes the utilities' business in Wheaton. There is no tax on business of the utilities not within the city. The additional charge related to the city tax is made only to customers receiving utility service in buildings within the city limits. The fact that the school district receives tax revenues from persons outside the city is irrelevant because the municipal utilities tax is imposed upon the utilities not upon the school district ***. Moreover, such an effect is not authorized; the extrater-

ritorial effect here has clearly been approved by the legislature which both permitted the initial tax and its being passed on." (*Commonwealth Edison Co. v. Community Unit School District No. 200* (1976), 44 Ill. App. 3d 665, 672.)

The county also misses the point that the General Assembly has authorized the transfer of the economic burden of the municipal utility tax to all utility customers. Ill. Rev. Stat. 1981, ch. 111²/₃, par. 36(a).

We therefore conclude that the statutory municipal utility tax as applied to the objecting local government units is valid.

### PROTEST FUNDS

On February 24, 1982, the circuit court of Cook County ordered that all monies collected by Illinois Bell and remitted to the defendant municipalities, pursuant to the consumer utility taxes at issue, be treated as being paid under protest with a trust being imposed on that amount. The court order also provided that the municipalities "[m]ay use the proceeds of the taxes but shall remain liable to account therefor if this court so provides."

Prior to our consideration of the case, this court was asked by the intervenors Prentice, Gideon and Keeler to require that the city of Evanston and the village of Oak Park order Illinois Bell, Northern Illinois Gas and Commonwealth Edison to submit all payments collected as a result of the taxes into a special fund. The same movants also requested that the court order the defendant municipalities to pay into the special fund all monies received by them in trust, under the circuit court order of February 24, 1982. We agree with the movants that the money in the trust fund should be paid into a special fund. We further find that all payments collected pursuant to the consumer utility tax in Oak Park, as well as Evanston and Rosemont, should be deposited in a special fund with the appropriate refunds to be overseen by the circuit court.

The circuit court of Lake County had ordered a refund of the consumer utility tax and set forth the specific method of the refund. Proceeds of the special protest fund were to be paid over to the utility companies and "thereafter credited against the then existing utility accounts."

Appellant David N. Barkhausen contends that the circuit court order should have required the utilities to account for all interest earned on the consumer utility tax revenues billed and collected prior to their remittance to the special protest fund.

Contrary to appellant Barkausen's contention, we find that, in collection and remittance of taxes in precise accordance with their duties under the respective consumer utility ordinances, the utilities cannot be deemed to be unjustly enriched. The utilities are, however, not entitled to be compensated for expenses incurred in collecting the consumer utility tax.

We further find that interest that has accrued on the protest fund established in Lake County is refundable to the consumers along with the corpus of the fund. In the past the court has held that in the absence of a statute or agreement to the contrary, interest is not normally recoverable. (*Lakefront Realty Corp. v. Lorenz* (1960), 19 Ill. 2d 415.) The circumstances in Lake County differ from the situation presented to the court in *Lakefront Realty*. Presuming that interest income has been earned on the protest fund established in Lake County, it is recoverable as an incident of the protest fund itself. See *Town of City of Peoria v. O'Connor* (1981), 85 Ill. 2d 195, 207.

The situation in Cook County, however, is more akin to the circumstances the court was confronted with in *Lakefront Realty*. No money was available in *Lakefront Realty* and it is presumed that no money is available in the instant case in Cook County to pay the interest. No protest fund was ever established in Cook County. The consumers are therefore not entitled to an interest award since no in-

terest has been generated by a special protest fund.

Finally David N. Barkhausen contends that his request of the circuit court of Lake County to have all the Waukegan taxpayers certified as a class and himself as a representative of that class should have been granted. If Mr. Barkhausen seeks to pursue this remedy, as the mechanism for refunds is established, he may raise the issue of class certification at a hearing in the circuit court. A proponent of a class action has the burden of establishing the statutory prerequisites, and the court must find them present before it can sanction maintenance of the action as a class action. (*McCabe v. Burgess* (1979), 75 Ill. 2d 457, *cert. denied* (1979), 444 U.S. 916, 62 L. Ed. 2d 170, 100 S. Ct. 230.) No such finding has been made in the instant case, and Mr. Barkhausen has not demonstrated before this court that he has satisfactorily established the statutory prerequisites.

In summation, we affirm the order of March 15, 1982, entered by the circuit court of Lake County upholding the constitutionality of the 5% statutory utility tax and striking down Waukegan's 3% home rule consumer utility tax as an unconstitutional occupation tax. We reverse the order of March 19, 1982, entered by the circuit court of Cook County that dismissed the complaint and declared that the consumer utility taxes at issue are constitutional exercises of home rule powers. We remand to the circuit courts of Lake and Cook counties with directions to oversee the distribution of the previously collected consumer utility taxes in accordance with this opinion.

> *56393* — *Affirmed and remanded, with directions.*
> *56394* — *Reversed and remanded, with directions.*