MICHAEL IŞBERIAN, Plaintiff-Appellee, *v.* THE VILLAGE OF GUR-
NEE, Defendant-Appellant.

First District (3rd Division)   No. 82—1807

Opinion filed June 22, 1983.

James R. Schirott and John T. Elsner, both of Samelson, Knickerbocker & Schirott, of Des Plaines, for appellant.

Berle L. Schwartz, of Highland Park, and Larry D. Drury, of Chicago (Andi C. Goldfine, of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Michael Isberian, brought this class action on his own behalf and on behalf of all individuals who paid an amusement tax under Gurnee ordinance 80—50 and its predecessor 76—17. Alleging that the village of Gurnee had been unjustly enriched thereby, plaintiff sought recovery of the tax on the grounds that the ordinance in question was illegal and in violation of the Illinois Constitution. After a bench trial, the trial court entered judgment for plaintiff in the amount of $2,488,210.35, finding that the ordinance constituted an illegal occupation tax. The village appeals.

Village of Gurnee ordinance 80—50 imposed a tax "upon all persons or corporations involved in the operation of amusement parks or theme parks within the Village of Gurnee of an amount of 25 cents ($.25) per ticket from fees or charges paid by persons who attend said amusement park or theme park."

Pursuant to this ordinance, a 25-cent charge was added to the price of a ticket for admission to Marriott's Great America. Plaintiff purchased four such tickets during the summer of 1981 and attended Great America. He later filed this action seeking recovery of the tax from the village on the ground that it constituted an illegal tax on occupations which was prohibited by article VII, section 7 of the 1970 Illinois Constitution.

Relevant to this appeal are the following provisions of article VII of the 1970 Illinois Constitution:

"Sec. 6(a) *** [E]xcept as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, *** the power *** to tax ***.

* * *

(e) A home rule unit shall have only the power that the General Assembly may provide by law *** to *** impose taxes upon *** occupations.

*** 

(g) the General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or

limit the power to tax and any other power or function of a home rule unit ***.

* * *

Sec. 7 Counties and municipalities which are not home rule units shall have only powers granted to them by law and [other powers specified in sec. 7] ***." (Emphasis added.)

Also relevant to this appeal is section 9 of the Transition Schedule of the 1970 Constitution, which provides that "[a]ll laws *** not contrary to, or inconsistent with, the provisions of this Constitution shall remain in force ***."

Defendant is not a home rule unit. It therefore derives its power from section 7 of the 1970 Constitution. Since the power to tax amusements is not one of the powers specified in that section, the village had no authority to impose the tax in question unless such authority was granted to it "by law."

The village takes the position that the statute which authorizes municipalities to tax amusements, provides such authorization. (Ill. Rev. Stat. 1981, ch. 24, par. 11—42—5.) The trial court, however, adopted plaintiff's position that since the statute was enacted prior to the adoption of the 1970 Constitution, it could not provide the legislative authorization required by section 7. The trial court also found that the tax in question constituted an occupation tax and as such was impliedly prohibited by section 6(e). The court reasoned that it would be contrary to the 1970 Constitution to allow a non-home-rule unit to enjoy greater power than that enjoyed by a home rule unit.

On appeal, the village urges that its ordinance constituted a permissible tax and that in any event plaintiff is barred from recovering under the doctrine of voluntary payment. The trial court ruled against the village on this latter issue for want of proof.

■■ We first address the village's contention that the ordinance constituted a permissible tax. The statute provides in pertinent part that "[t]he corporate authorities of each municipality may *** tax *** amusements ***." (Ill. Rev. Stat. 1981, ch. 24, par. 11—42—5.) We find that this provision did provide the statutory authorization required by section 7 to empower the village to enact the ordinance in question. We disagree with the finding of the trial court that because section 11—42—5 was enacted prior to the adoption of the 1970 Constitution it could not provide such statutory authorization. According to section 9 of the General Transition Schedule, "[a]ll laws *** not contrary to, or inconsistent with, the provisions of this Constitution shall remain in force ***." There is no inconsistency between the section 11—42—5 statutory authorization to tax amusements and the sec-

tion 7 constitutional provision limiting the powers of non-home-rule units to those authorized by law. We therefore find that section 11—42—5 remains in force.

The cases on which plaintiff relies to support the trial court's position with regard to section 11—42—5 are distinguishable. *Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 338 N.E.2d 6, involved the question of whether a statute enacted prior to the adoption of the 1970 Constitution could operate to restrict the broad taxing powers granted to home rule units by section 6(a). Section 6(g) does authorize the legislature to limit those powers, but only by a law approved by three fifths of the members of each house and enacted in a specific effort at limiting home rule power. (*Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 290 N.E.2d 240.) The court in *Mulligan* recognized that, since home rule units were a creation of the 1970 Constitution, a statute passed prior thereto clearly could not represent an effort by the General Assembly to limit home rule power.

Relying upon *Mulligan*, plaintiff argues that since a preexisting statute cannot limit a power granted by the new constitution, it logically follows that a preexisting statute cannot remove a barrier imposed by such constitution. We find this analogy to be inapplicable here because we find no barrier in section 7 which would be removed by section 11—42—5. Although section 7 does limit the powers of non-home-rule units to those granted to them by law, it does not bar their exercise of powers previously granted to them by law. Prior to its adoption of the 1970 Constitution, Illinois had no home rule units. Under the 1870 Constitution the powers of all municipalities were limited to those conferred on them by the State through the General Assembly. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2727; *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227.) Thus, prior to 1970, all municipalities, the village included, enjoyed the power to tax authorized by section 11—42—5. Although the newly created home rule units were given greatly expanded powers by the 1970 Constitution, the powers of non-home-rule units continued to be limited to those powers authorized by statute. We find no indication that the framers intended to restrict further the powers of non-home-rule units, by barring their exercise of powers previously granted by the legislature.

Plaintiff's reliance on *Estate of Carey v. Village of Stickney* (1980), 81 Ill. 2d 406, 411 N.E.2d 209, is likewise misplaced. At issue in that case was the validity of an ordinance, passed by a home rule unit, which required racetrack licensees to pay an admission tax of 10 cents for each person entering the grounds. The court found that the

tax in question was a tax on occupations and thus precluded by section 6(e) unless authorized by the General Assembly. Although defendant argued that section 11—42—5 provided such authorization, that provision was found to be inapplicable to racetrack licensees pursuant to statute. (Ill. Rev. Stat. 1975, ch. 8, par. 37j1.) While the holding in *Estate of Carey* supports plaintiff's contention that the tax in question here constituted an occupation tax, the court in that case never addressed the question of whether section 11—42—5 could operate to authorize such tax pursuant to section 6(e).

Likewise, the majority of the court in *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118, failed to address that question. Since it found that the tax in question did not constitute an occupation tax, the court did not reach the issue of whether section 11—42—5 could have provided the statutory authorization required by section 6(e) to validate such a tax. Plaintiff, however, relies on the dissent in *Town of Cicero* which found the tax to constitute an occupation tax and stated that because section 11—42—5 was enacted prior to the 1970 Constitution, it could not provide the legislative authorization required by section 6(e) to overcome the general prohibition of occupation taxes contained therein.

The dissent clearly supports the trial court's position on this issue. We, however, find the concurring opinion of Justice Schaefer to be more persuasive. He also found the tax to constitute an occupation tax but found that section 11—42—5 provided the legislative authorization required by both sections 6(e) and 7 to give any municipality, whether home rule or non-home rule, the power to impose an occupation tax on amusements. Since we find that section 11—42—5 is in no way inconsistent with either 6(e) or 7, we agree with this conclusion.

Plaintiff urges that it would be contrary to the 1970 Constitution to find that section 11—42—5 authorizes the village to impose the tax in question since such a finding would authorize a non-home-rule unit to exercise a power prohibited to home rule units. We agree that the framers intended home rule units to have greater powers than those of non-home-rule units. (*City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 367 N.E.2d 692.) In light of our finding that section 11—42—5 provides the legislative authorization for both types of municipalities to impose such a tax, however (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 24 (Schaefer, J., concurring)), we find plaintiff's argument to be inapplicable here.

■ Even if we were to find that the village lacked authority to impose the tax in question, however, plaintiff would not be able to recover. In the absence of an authoritative statute, taxes voluntarily

paid cannot be recovered. (*Snyderman v. Isaacs* (1964), 31 Ill. 2d 192, 201 N.E.2d 106; *Scoa Industries, Inc. v. Howlett* (1975), 33 Ill. App. 3d 90, 337 N.E.2d 305.) A tax is paid voluntarily where it is paid absent duress or compulsion, without protest, and with knowledge of facts upon which to frame a protest. *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 426 N.E.2d 844.

■ The doctrine of voluntary payment was raised by the village as an affirmative defense and dismissed by the trial court for want of proof. Plaintiff alleged payment of the tax and admitted that the tax was separately stated on the ticket. A copy of the ticket attached to the complaint shows the 25 cents tax as a Village of Gurnee Admission Tax. Under the circumstances of this case, we do not see what other evidence should have been required, and we hold there was sufficient evidence to support the defense.

Relying upon *Getto*, plaintiff maintains that he did not have sufficient knowledge to frame a protest because there was no way he could have known the true character of the tax or that it was illegal. It is not necessary, in order to invoke the doctrine of voluntary payment, however, that the taxpayer be aware of the illegality of the tax at the time he makes the payment. (*Snyderman v. Isaacs*.) It is sufficient if the plaintiff had before him sufficient facts upon which he could have based a contention of illegality. *Getto v. City of Chicago*.

In *Getto*, as in the present case, the bill or ticket revealed the governmental entity which was levying the tax. Unlike the present case, however, the impropriety of the tax in *Getto* was based upon the manner in which it had been computed. There was no way the taxpayer could have known of this improper computation by a mere indication on the bill of the ultimate recipient of the tax. Here, since plaintiff is challenging the authority of the village to impose the tax, we find that the ticket's designation of the village as the taxing body and the labeling of the tax as an admission tax sufficiently apprised plaintiff of facts upon which he could have framed a protest.

■ We also reject plaintiff's claim that he paid the tax under duress. He states that his refusal to purchase the tickets would have caused his child psychological duress. For a payment to be deemed under duress there must be some actual or threatened power believed to be possessed by the payee over the payor from which the latter has no reasonable means of immediate relief except by paying the tax. (*Scoa Industries, Inc. v. Howlett*.) We do not believe that the potential disappointment of plaintiff's child if prohibited from attending Great America was sufficient to warrant a finding that plaintiff purchased the ticket under duress.

■ We finally address the argument that the village would be unjustly enriched if allowed to keep the tax. An exception to the voluntary payment doctrine was recognized in *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 155 N.E.2d 595, in a situation where application of the doctrine would have resulted in unjust enrichment. In that case, defendant retailer had sold to plaintiff goods the price of which included a tax due the State by the retailer on account of the transaction. The retailer subsequently paid the tax to the State under protest and then successfully sued for a refund. Plaintiff, who had voluntarily paid the tax to the retailer, sought restitution. The court found that, since plaintiff bore the burden of the tax, application of the voluntary payment doctrine to preclude restitution to plaintiff would result in the retailer being unjustly enriched.

The plaintiff in *Estate of Carey v. Village of Stickney* was in a position analogous to that of the retailer in *Harrison*. A racetrack licensee, it asked the court to declare invalid an ordinance requiring licensees to pay a 10 cents tax for every person entering the track grounds. Plaintiff had refused to pay the tax and contended that it had not collected the tax from ticket holders. After declaring the tax invalid, the court held that if on remand the trial court should find that plaintiff had in fact collected the tax from ticket holders, the State's policy against unjust enrichment would require that the money be refunded to those who bore the burden of the tax.

Both *Harrison* and *Estate of Carey* are distinguishable from the present case. The exception to the voluntary payment doctrine, as utilized in both of those cases, operated to prevent a party, other than the taxing body itself, from keeping money which it had erroneously collected from its customers as a tax but which it had either failed to turn over to the taxing body (*Estate of Carey*), or had paid the State but subsequently secured a refund (*Harrison*). We find no case where the exception has been applied against the taxing body itself. If we were to hold that the retention by a taxing body of an illegal tax, voluntarily paid, constituted unjust enrichment so as to prohibit application of the voluntary payment doctrine, the exception would in effect negate the doctrine itself.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

WHITE and O'CONNOR, JJ., concur.