SONNIE WELLINGTON *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHI-CAGO *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—577

Opinion filed May 20, 1986.

Joel R. Monarch and Daniel P. Madden, both of Chicago, for appellants.

James D. Montgomery, Corporation Counsel, of Chicago (Mary K. Rochford and Jennifer A. Keller, Assistant Corporation Counsel, of counsel), for appellees.

Sonnenschein, Carlin, Nath & Rosenthal and Jann, Carroll, Sain & Dolin, Ltd., both of Chicago (Kenneth H. Hock, Carol M. Parker, and David A. Epstein, of counsel), for *amici curiae*.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs' class action challenging the application of the Chicago transaction tax ordinance as an invalid occupation tax was dismissed by the circuit court which held, as a matter of law, that the transaction tax was not an occupation tax. On appeal plaintiffs contend (1) the Chicago transaction tax ordinance constitutes an invalid occupation tax as applied to lessee cabdrivers; (2) a statute enacted prior to the adoption of the 1970 Illinois Constitution cannot constitutionally provide home rule units with the authority necessary to tax occupations; and (3) plaintiffs' complaint sufficiently alleged that their pay-

ment of the transaction tax was involuntary and under duress.

Plaintiffs are drivers of leased taxicabs and holders of valid public chauffeur's licenses. *Amici curiae,* Yellow Cab and Checker Cab, are the holders of over 3,600 of 4,600 available taxi licenses in Chicago. Taxis may only be operated by persons holding valid public passenger vehicle licenses. (Municipal Code of Chicago, ch. 28, sec. 2. (1984).) Plaintiffs allege that they have each entered into 50 or more taxi leases with Checker Cab, Yellow Cab, or other cab companies.

Chicago, as a home rule unit, has enacted a transaction tax ordinance which, in part, imposes a tax on all leases and rentals of personal property. (Municipal Code of Chicago, ch. 200.1. (1981).) The ordinance imposes a tax at the rate of 6% of the lease price. (Municipal Code of Chicago, ch. 200.1, sec. 2.A.1. (1981).) Plaintiffs have paid the tax as applied to their taxi leases. They allege that their payments have been made involuntarily and under duress.

Plaintiffs filed a class action seeking declaratory and injunctive relief and an accounting. Plaintiffs' complaint alleged that the transaction tax, as applied to them, constitutes an invalid occupation tax. Additionally, plaintiffs sought certification of a class of lessee cabdrivers with themselves as representatives.

On February 1, 1985, the circuit court dismissed plaintiffs' complaint pursuant to defendants' motion, finding, as a matter of law, that the Chicago transaction tax is not an occupation tax as applied to the plaintiffs. No class had at that time been certified.

■■ The Chicago transaction tax ordinance has previously been challenged and upheld in *Williams v. City of Chicago* (1977), 66 Ill 2d 423, 362 N.E.2d 1030, *cert. denied* (1977), 434 U.S. 924, 54 L. Ed. 2d 282, 98 S. Ct. 402, and *Webster v. City of Chicago* (1985), 132 Ill. App. 3d 666, 478 N.E.2d 446. In *Williams* the ordinance was upheld on equal protection and due process grounds (*William v. City of Chicago* (1977), 66 Ill. 2d 423, 432, 362 N.E.2d 1030, *cert. denied* (1977), 434 U.S. 924, 54 L. Ed. 2d 282, 98 S. Ct. 402) while in *Webster* the statute was upheld against a claim that it imposed an occupation tax upon lessors (*Webster v. City of Chicago* (1985), 132 Ill. App. 3d 666, 669, 478 N.E.2d 446). The *Webster* court characterized the tax here in dispute as one where the consumer pays for the "use and temporary transfer of possession of tangible property" and stated unequivocally that the leasing tax is not a tax on occupations. (132 Ill. App. 3d 666, 669, 478 N.E.2d 446.) However, insofar as the *Webster* lessee plaintiffs alleged that the tax was upon their lessors' occupations, not on their own occupations, *Webster* does not resolve the case at hand without further discussion.

The 1970 Illinois Constitution provides:

"(a) *** Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.
* * *

(e) A home rule unit shall have only the power that the General Assembly may provide by law *** [2] to license for revenue or [to] impose taxes upon or measured by income or earnings or upon occupations.
***

(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit ***.
* * *

(m) Powers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, sec. 6.

This constitutional section established municipal home rule authority in Illinois. One of the major restrictions on home rule power is the limitation upon occupation taxes. (Ill. Const. 1970, art. VII, sec. 6(e).) Home rule units may only impose taxes by occupation to the extent that the General Assembly specifically authorizes. A tax "upon occupations" is essentially identical to the term "occupation tax." (*Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, 566, 317 N.E.2d 3.) An occupation tax is a tax which has "one of two missions: either to regulate and control a given business or occupation, or to impose a tax for the privilege of exercising, undertaking or operating a given occupation, trade or profession." *Reif v. Barrett* (1933), 355 Ill. 104, 109, 188 N.E. 889.

■ The *Reif* court distinguished property taxes from occupation taxes, defining a property tax as one "levied against property" (*Reif v. Barrett* (1933), 355 Ill. 104, 109, 188 N.E. 889) and based "upon the value of the property sold" (355 Ill. 104, 111, 188 N.E. 889). In their brief *amici* concede that the clear purpose of the Chicago transaction tax is to impose a tax upon the lessee's temporary possession of personal property as measured by the rental price of that property. They admit that the transaction tax is facially neutral. They urge, however, that the transaction tax is an occupation tax as it is applied to taxicab leases because it is levied not upon the value of temporary possession, but rather, upon the value of the privilege of using a li-

censed taxicab. Plaintiff's reason that to pursue their occupation as cabdrivers, they must lease a cab and that in order to lease a cab they must pay the transaction tax; therefore, in order to pursue their occupation they must pay the transaction tax. Consequently, plaintiffs argue, the transaction tax is an occupation tax, at least in its application to them.

The transaction tax ordinance provides:

"There is hereby imposed and shall immediately accrue and be collected a tax *** on all transactions designated herein, including *** leases and leases or rental agreements and memoranda, as follows:

A. Transactions consummated in the City of Chicago involving the lease or rental of any personal property, *** when delivery or use also takes place in the City of Chicago.

1. The tax imposed by this Section *** shall be six percent of such lease or rental price.

2. The ultimate incidence of and liability for payment of said tax shall be borne by the lessee ***.

* * *

5. (a) As used in paragraph 200.1—2A, personal property *** includes but shall not be limited to motor and other vehicles, which shall include but not be limited to automobiles ***." Municipal Code of Chicago, ch. 200.1, sec. 2.A.1. (1981).

Plaintiffs' characterization of this tax as an occupation tax is erroneous. In this instance, the tax happens to fall upon some members of plaintiffs' occupation. Plaintiffs do not contend that all cabdrivers lease cabs and therefore pay the transaction tax; rather, plaintiffs have attempted to limit their class and their occupation to lessee cabdrivers. However, their occupation should be recognized more broadly as cabdrivers, and cabdrivers, in general, are not taxed by the transaction tax. Only the leases of lessee cabdrivers are taxed. The transaction tax was not designed to impose a tax upon the occupation of being a taxicab driver.

Neither does the transaction tax in fact operate to impose a tax on the privilege of engaging in the occupation of being a taxicab driver. One can work as a taxicab driver in the city of Chicago, without paying the tax, by owning a cab or by being an employee of another cabdriver. The fact that plaintiffs lease their taxicabs and now contend that they have no choice other than to lease does not transform the transaction tax into an occupation tax. (See *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 23, 357 N.E.2d 1118.) Rather, the tax is one which some cabdrivers must pay inciden-

tal to their occupation. The purpose of the Chicago transaction tax is to impose a tax on a broad range of transactions, including leases or rentals of personal property delivered or used in Chicago. Because the transaction tax was not designed to impose and does not in fact impose a tax upon the occupation of being a cabdriver, it is not an occupation tax.

■ Plaintiffs also contend that the transaction tax constitutes an occupation tax because the incidence of the transaction tax, its ultimate burden, falls not upon the consuming public, but upon plaintiffs as businessmen. Arguing that they are prohibited from passing the burden on to the consuming public, plaintiffs urge us to judge the tax by its practical operation and effect. We do not agree that that test is appropriate in the instant case.

The practical operation and effect test was applied in *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227 and in *Waukegan Community Unit School District No. 60 v. City of Waukegan* (1983), 95 Ill. 2d 244, 447 N.E.2d 345, only after our supreme court found that the sale of services taxes involved in those cases were prohibited by section 6(e) of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, sec. 6). In each case, the court determined that a declaration that the legal incidence of such prohibited taxes was upon the purchaser was insufficient to avoid the constitutional restrictions. Instead, the practical operation of the ordinance was judged against the intent expressed by the delegates to the constitutional convention. *Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 64, 432 N.E.2d 227; *Waukegan Community Unit School District No. 60 v. City of Waukegan* (1983), 95 Ill. 2d 244, 254-55, 447 N.E.2d 345.

Here, the disputed tax is not a service tax prohibited by article VII, section 6(e), of the Constitution, but is a tax on the rental of personal property delivered or used in Chicago. (*Webster v. City of Chicago* (1985), 132 Ill. App. 3d 666, 669, 478 N.E.2d 446.) We said in *Webster* that "nothing in the history of section 6(e) evidences an intent to prevent a tax on temporary transfers of personal property." (132 Ill. App. 3d 666, 669, 478 N.E.2d 446.) The legal incidence of the Chicago transaction tax is placed upon the lessee, the user of the leased item, and this is consistent with the general nature of this type of tax as one authorized by article VII, section 6(a), of the Constitution. As we stated earlier, the fact that some members of an occupation, taxicab drivers who lease, bear the burden of the tax does not make the transaction tax an occupation tax.

■ As a final aspect of plaintiffs' challenge of the transaction tax

as an occupation tax, plaintiffs point to the intangible nature of part of the leased property. The argument is not persuasive. Plaintiffs have leased integrated objects, not a series of unrelated items. They have leased a licensed taxicab bearing the trademarks of the lessor company. The fact that parts are intangible does not alter the nature of the transaction. Intangibles may be included, according to the ordinance, in a lease of personal property. (Municipal Code of Chicago, ch. 200.1, sec. 2.A.5(b) (1981).) Characterization of tax aspects of the lease must focus on the general nature of the transaction. (See *First National Bank of Springfield v. Department of Revenue* (1981), 85 Ill. 2d 84, 89, 421 N.E.2d 175, citing *Time, Inc. v. Hulman* (1964), 31 Ill. 2d 344, 201 N.E.2d 374.) Here, the essence of the lease is the lease of personal property, the taxicab, not the taxi license, the trademarks, or the tradename. When an individual rents an automobile, he also rents its license and the rental value would be diminished if there was no license. But that does not alter the nature of the rental as a rental of personal property. Thus, in the instant case, the leases are essentially leases of tangible personal property, taxicabs, and are not leases for the privilege of using a licensed taxicab.

We conclude, therefore, that the Chicago transaction tax ordinance is not an occupation tax even as applied to plaintiffs and their uncertified class.

■ Even though our holding disposes of the need to address the remaining issues plaintiffs advance, we choose to comment upon plaintiffs' second contention on appeal. Defendants argued to the trial court in their motion to strike and dismiss plaintiffs' complaint that the Illinois Municipal Code permits the city to "license, tax, and regulate hackmen, draymen, omnibus drivers, carters, cabmen, porters, expressmen, and all others pursuing like occupations." (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—6.) On appeal, plaintiffs have asserted that the paragraph is no longer effective due to the adoption of the 1970 Constitution. The Constitution neither expressly nor implicitly revokes or adopts the provisions of the Municipal Code. Rather, the transition schedule for the 1970 Constitution provides:

"All laws, ordinances, regulations and rules of court not contrary to, or inconsistent with, the provisions of this Constitution shall remain in force, until they shall expire by their own limitation or shall be altered or repealed pursuant to this Constitution." Ill. Const. 1970, transition schedule, sec. 9.

Plaintiffs argue that statutes enacted prior to 1970 cannot be used as "enabling" acts by home rule units and that this statute, as used to tax an occupation, is inconsistent with the 1970 Constitution.

Earlier Illinois decisions have discussed this issue. It was treated twice in *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 357 N.E.2d 1118. *Town of Cicero* involved a municipal amusement tax which the court held not to be an occupation tax. (65 Ill. 2d 10, 24, 357 N.E.2d 1118.) The majority expressly declined to resolve whether a pre-1970 statute could authorize a municipal occupation tax since they found the contested tax was not an occupation tax. (65 Ill. 2d 10, 22, 357 N.E.2d 1118.) Contrary to the contentions of the instant case's *amici* brief, in a concurring opinion, Justice Schaefer found that that tax was an occupation tax, and also asserted:

> "But the fact that the tax is a tax upon occupations does not impair its validity, for this tax is one that the General Assembly has 'by law' authorized any municipality—whether home rule or not—to impose." 65 Ill. 2d 10, 25, 357 N.E.2d 1118. (Schaefer, J., concurring).

The General Assembly law he referred to is parallel to the one here challenged by plaintiff cabdrivers and contains both similar language and a similar grant of power. Compare Ill. Rev. Stat. 1985, ch. 24, par. 11—42—5, with par. 11—42—6.

Conversely, in dissent, Justice Kluczynski stated:

> "Section 11—42—5 *** was enacted by the General Assembly prior to the 1970 Constitution [citation], and it cannot provide the legislative authorization required by section 6(e) [Ill. Const. 1970, art. VII, sec. 6(e)] to overcome the constitutional prohibition contained in that section. Section 11—42—5 of the Municipal Code cannot remain in force under the provisions of section 9 of the Transition Schedule, because it is contrary to the specific prohibition of section 6(e)(2), which precludes home rule municipalities from imposing a tax upon occupations." 65 Ill. 2d 10, 30, 357 N.E.2d 1118. (Kluczynski, J., dissenting).

In *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 452 N.E.2d 10, we summarized and relied upon Justice Schaefer's concurring opinion, stating:

> "[S]ection 11—42—5 provided the legislative authorization required by both sections 6(e) and 7 [the constitutional provisions for home rule and non-home rule units] to give any municipality, whether home rule or non-home rule, the power to impose an occupation tax on amusements. Since we find that section 11—42—5 is in no way inconsistent with either 6(e) or 7, we agree with this conclusion.
>
> [It was also urged] that it would be contrary to the 1970 Con-

stitution to find that section 11—42—5 authorizes the village to impose the tax in question since such a finding would authorize a non-home-rule unit to exercise a power prohibited to home rule units. We agree that the framers intended home rule units to have greater powers than *** non-home-rule units. (*City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 367 N.E.2d 692.) In light of our finding that section 11—42—5 provides the legislative authorization for *both types of municipalities* to impose such a tax, however, (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 24 (Schaefer, J., concurring)) we find *** [the argument] to be inapplicable here." (Emphasis added.) 116 Ill. App. 3d 146, 150, 452 N.E.2d 10.

The finding in *Isberian* that pre-1970 statutes can provide valid grants of authority to both home rule and non-home rule units is not mere *dicta*. In order to hold that a non-home-rule municipality's amusement tax was validly authorized by a pre-1970 statute (section 11—42—5 in *Isberian*, section 11—42—6 in the instant action), the court necessarily found that pre-1970 statutes could grant taxing powers to home rule units since home rule units are more autonomous and powerful than non-home-rule units. (*City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 274, 367 N.E.2d 692.) Home rule units should, as a starting point, possess the powers of non-home-rule units because those are the basic municipal powers in Illinois. The analysis in both *Isberian* and the concurrence to *Town of Cicero* is therefore sound.

We are aware of decisions holding that restrictions placed on municipalities prior to the adoption of home rule are inconsistent with that adoption and cannot be used as authority for limiting municipal power. (*Mulligan v. Dunne* (1975), 61 Ill. 2d 544, 550, 338 N.E.2d 6, cert. denied (1976), 425 U.S. 916, 47 L. Ed. 2d 768, 96 S. Ct. 1518; *Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50, 309 N.E.2d 576.) That analysis, however, is not analogous to powers *granted* to municipalities prior to the adoption of home rule. The object of home rule was to grant more authority and autonomy to municipalities. (See *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 367 N.E.2d 692.) It would be inconsistent to diminish powers due to the adoption of home rule.

■ *Amici* further contend that section 11—42—6 was originally intended to apply only to the owners of cabs. *Amici* attempt to limit "cabmen" to license holders. Their attempt, however, appears to be at odds with the apparent scope of the statute. We believe that inclusion of "omnibus drivers, *** porters, *** and all others pursuing like occupations" signifies an intent to include the actual workers and opera-

tors. Ill. Rev. Stat. 1985, ch. 24, par. 11—42—6.

■ Finally, *amici* contend that the application of the tax is nonuniform and that section 11—42—6 cannot authorize that which is in violation of the Illinois Constitution. They argue that lessee cabdrivers have to pay the transaction tax while nonlessee cabdrivers do not. We find this argument of little merit since nonlessee cabdrivers may in fact pay more in other taxes such as sales tax. Moreover, as to plaintiffs' "class" of lessee cabdrivers, the tax is a uniform 6%.

There is, therefore, no apparent reason to find that the 1970 Constitution revoked pre-1970 municipal powers expressly granted by the General Assembly. Non-home-rule units have retained those pre-1970 powers (*City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 274, 367 N.E.2d 692; *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 150, 452 N.E.2d 10) and allowing for the "liberal construction" mandated by the home rule section (Ill. Const. 1970, art. VII, sec. 6(m); *Ampersand, Inc. v. Finley* (1975), 61 Ill. 2d 537, 539, 338 N.E.2d 15) and the goal of granting greater power and autonomy to home rule units (see *City of Urbana v. Houser* (1977), 67 Ill. 2d 268, 367 N.E.2d 692), home rule units should not be denied pre-1970 municipal powers.

We affirm.

Affirmed.

SCARIANO and McMORROW, JJ., concur.