FARM PROGRESS SHOW CONCESSIONS, Plaintiffs-Appellees, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Second District   No. 78-581

Opinion filed April 23, 1980.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and Patricia Rosen, Assistant Attorneys General, of counsel), for appellant.

Stinespring, Stinespring & Stinespring, of Chicago, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The Department of Revenue of the State of Illinois (the Department) appeals from a judgment entered in the circuit court on administrative review which reversed the Department's denial of a sales tax exemption. The plaintiffs are 14 churches who for convenience have adopted the title of Farm Progress Show Concessions (the Churches). The tax was assessed by the Department pursuant to the provisions of section 1 of the Illinois Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 440) and pursuant to the interpretation of the rules promulgated by the Department.

The sales arose from the sale of food and soft drinks at a Farm Progress Show sponsored by the Prairie Farmer magazine. The Churches were solicited by the magazine to serve the food. The attendance was estimated at between 250,000 and 300,000 people. The Churches sold more than $200,000 worth of food. Volunteer workers were used, and no money was given to the Prairie Farmer magazine.

The 14 Churches were the only vendors of food at the show and none of them had ever been involved previously. The location of the show was 3 miles from the nearest town and the only commercial vendor of food within 3 miles of the show was a restaurant with a seating capacity of 10 chairs.

The Department assessed the tax in the amount of $11,449.27 on the Churches as a group. The tax was paid, and a claim for credit was filed. The Churches alleged that they should be exempt from taxation pursuant to the exception in section 1 of the Act for "occasional dinners, social or similar activities of a person organized and operating exclusively for charitable, religious or educational purposes, whether or not such activities are open to the public." A hearing was held by the Department in which the Churches' claim was denied because the hearing officer found the sales in question did not satisfy the noncompetitive requirement and that the dominant motive of the purchaser of the food was not to make a donation.

On administrative review the circuit court of Winnebago County reversed, finding that the Churches' activities "clearly and obviously come within the exceptions entitled occasional dinners, social, or similar activities." The court entered a judgment against the Department for $11,449.27 plus interest and costs of suit, from which the Department has appealed.

Section 1 of the Retailers' Occupation Tax Act generally includes the sales of tangible personal property by a not-for-profit service enterprise,

> "* * * excepting only a person organized and operated exclusively for charitable, religious or educational purposes * * * (2), to the extent of sales by such person of tangible personal property which is not sold or offered for sale by persons organized for profit. * * * The provisions of this paragraph shall not apply to nor subject to taxation occasional dinner, socials or similar activities of a person organized and operated exclusively for charitable, religious or educational purposes, whether or not such activities are open to the public." Ill. Rev. Stat. 1977, ch. 120, par. 440.

Rule 38, promulgated by the Department on March 1, 1968, relates to taxing sales by not-for-profit organizations and notes that exclusively charitable, religious and educational organizations incur retailers' occupation tax liability when they engage in selling tangible personal property at retail except in three situations. The first exception relates to sales to members of the organization which is not involved here. The rule continues:

### "NONCOMPETITIVE SALES

> The second exception is that sales by exclusively charitable, religious or educational organizations are not subject to the retailers' occupation tax when it can be said that such selling is noncompetitive with business establishments. * * *
> * * *

## OCCASIONAL DINNERS AND SIMILAR ACTIVITIES

The third exception is that occasional dinners, social or other similar activities which are conducted by exclusively charitable, religious or educational organizations or institutions are not taxable, whether or not such activities are open to the public. This exemption extends to occasional dinners, ice cream socials, fun fairs, carnivals, rummage sales, bazaars, bake sales and the like, when conducted by exclusively charitable, religious or educational organizations or institutions, whether the items that are sold are purchased or donated for the purposes of the sale, and even if the sale is open to the public.

For the purposes of this exemption, 'occasional' means not more than twice in any given one-year period.

This exemption does not extend to 'occasional' sales, by exclusively charitable, religious or educational organizations or institutions, of hats, greeting cards, cookbooks, flag kits and other similar items because these are not 'occasional dinners, social or *similar activities*' within the meaning of the Act, and the selling of these kinds of items at retail even on an occasional basis does generally place the selling organization in substantial competition with business establishments."

The Department contends that activities which qualify for the "occasional dinners" exception must also be noncompetitive with enterprises organized for profit in order to be exempted from the tax. We do not agree. We see nothing in the language of the statute which persuades us that the legislature intended to require noncompetitiveness as a qualification for the occasional dinners exception.

The Department concedes that there is no express reference to noncompetition in the statutory exemption. It reasons, however, that this intention is to be found in the history of the legislation, and the various interpretations placed upon it from time to time by the Department in promulgating its rules, ostensibly in accordance with opinions of the Attorney General in construing changes made in the Act from time to time.

In tracing the legislative history the Department notes that originally the tax was held not to cover sales by not-for-profit organizations by the court's narrow reading of the term "business of selling * * * at retail" in section 2 of the Act. (Ill. Rev. Stat. 1941, ch. 120, par. 441; *Svithiod Singing Club v. McKibbin* (1942), 381 Ill. 194.) Section 1 of the Act was amended in 1961 to expressly include sales by not-for-profit organizations,

"* * * excepting only a person organized and operated exclusively for charitable, religious or educational purposes to the

extent of sales by such person to its members, students, patients or inmates of tangible personal property to be used primarily for the purposes of such person, and to the extent of sales by such person of tangible personal property which is not sold or offered for sale by persons organized for profit." (Ill. Rev. Stat. 1961, ch. 120, par. 440.)

Following the amendment, the Department promulgated Rule 38, incorporating the standards set out in several Attorney General's opinions, which essentially stated that the statute provided the requirement that the dominant motive of most transferees of the items sold was to make a charitable contribution; and that the practical effect upon competition must be considered. Rule 38 was ruled upon by the Illinois Supreme Court thereafter in *Follett's Book & Supply Store, Inc., v. Isaacs* (1963), 27 Ill. 2d 600. The supreme court found that the then rules were not in conformance with the legislative intention, referring to a portion of the Act involving sales of school books which is not here involved. The Department argues that since the legislature then amended a portion of section 1 (par. 440) in 1963 to show a contrary intention as to the school book exemption the legislature thereby impliedly adopted the views of the Attorney General regarding noncompetitiveness. We find the reasoning to be strained.

■■ ■ The "occasional dinners" exception is clearly stated in the Act obviating the need to resort to statutory construction or legislative history. Even the Department's own Rule 38 does not make noncompetitiveness a requirement related to occasional dinners. To import the Rule 38 standard of noncompetitiveness which is stated as a separate exception into the occasional dinners provision renders the latter provision meaningless. If a church dinner is noncompetitive, it is exempted under the exception found in section 1(2) (par. 440(2)), irrespective of the later sentence specifically mentioning it. At the same time, if it is competitive, it falls outside the section 1(2) exception and by the Department's reasoning is thus not exempt. We will not credit the legislature with adding a sentence devoid of any operative effect. The statute should be read so that every word has meaning. *People ex rel. Cameron v. Flynn* (1914), 265 Ill. 414, 424.

The Department has also argued that the Churches' activities do not come within the "occasional dinners, social and similar activities" exception.

The Department makes several points in arguing that the activities of the Churches are outside the scope of the exception. First, it refers to Rule 38, which, in discussing the occasional dinners exception, requires that the dinner be "conducted by" the nonprofit organization. The Department contends that the Priaire Farmer magazine conducted the show, although

conceding that the Churches conducted the food sale. The food sales, however, are the focus of attention, not the surrounding show. Also, the statute itself has no similar language regarding conducting of the event.

■ The Department next states that a coordinator and a bookkeeper were paid by the Churches and thus that all the profits were not used for religious purposes. However, the Department hearing officer found that all the *proceeds* went to the Churches, clearly using that term in the sense of monies after expenses were paid. Since the payments made were clearly not excessive they do not tend to disprove that all the profits were used for religious purposes.

■ The Department further contends that since Rule 38 defines "occasional" as not more than twice a year, the Churches' sales covering more than three days did not qualify as an occasional dinner. We agree with the Churches that the sales were over one unbroken time span and were thus one dinner within the rule. The term "occasional" has been interpreted in other statutes to mean "occurring at irregular intervals." (See Ill. Rev. Stat. 1963, ch. 95½, par. 282.3(f); *People v. Johnson* (1966), 69 Ill. App. 2d 490, 497.) In *Aurora Brewing Co. v. Industrial Board* (1917), 277 Ill. 142, the term "casual employment" was held to mean occasional employment, or employment at irregular intervals. In *Aurora Brewing*, the court held that one job lasting four days was within the scope of casual or occasional employment. We find the Churches' activities are included as an occasional dinner under the facts before us.

■ The final major argument of the Department is that the Administrative Review Act, which provides that findings of fact of an administrative agency are prima facie true and correct (Ill. Rev. Stat. 1977, ch. 110, par. 274), was not followed by the court. The matters referred to are conclusions of law in the hearing officer's report and not findings of fact. Whether the Churches' activities were within the exception is a legal conclusion with no relevant factual dispute being involved. Thus, the Department's legal opinion, as well as its interpretative rules, are not binding on the courts except to the extent that they follow the statute. *Cf. Du-Mont Ventilating Co. v. Department of Revenue* (1978), 73 Ill. 2d 243, 247.

We therefore conclude that the Churches' activities are in the nature of "dinners, socials, and similar activities," and are "occasional" as that term has been judicially construed in Illinois. The activities are therefore within the statutory exemption. The judgment of the trial court is affirmed.

Affirmed.

WOODWARD and NASH, JJ., concur.