THOMAS R. MEITES *et al.*, d/b/a Meites, Frackman & Mulder, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—88—2410

Opinion filed June 20, 1989.

Arnold M. Flamm and Matthew A. Flamm, both of Orlikoff & Flamm, of Chicago, for appellants.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and L. Anita Richardson, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

This appeal arises from an unsuccessful challenge in the circuit court to the City of Chicago's transaction tax as imposed on online database searches on the Nexis/Lexis computerized legal library system operated by Mead Data Central, Inc. Plaintiff appeals, raising the following issues on appeal: (1) whether the Chicago transaction tax ordinance authorizes the imposition of tax on all charges made for the use of a computer and its software, including database search charges; and (2) whether such a tax is a tax upon occupations, in violation of section 6(e) of article VII of the Illinois Constitution.

Plaintiff, a law partnership, subscribes to the Lexis/Nexis databases maintained by Mead. It is challenging the City of Chicago's collection of a transaction tax on charges billed for database searches, arguing that the transaction tax ordinance does not authorize the tax on such charges and that the city's Department of Revenue's Ruling No. 9, which interprets the ordinance, is overly broad and invalid.

Count I of plaintiff's amended complaint alleges that the Chicago transaction tax ordinance is not broad enough to cover the imposition of the tax upon charges made for online database searches where those charges are not time based. Count II, which plaintiff subsequently dismissed, asserts a violation of equal protection. Count III alleges that if the transaction tax ordinance does cover charges for online database searches, it is unconstitutional as a tax on occupations. The city filed two separate motions to strike and dismiss; one based on section 2–615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2–615), and the other on section 2–619 (Ill. Rev. Stat. 1987, ch. 110, par. 2–619). On May 11, 1988, the trial judge filed a memorandum of decision, indicating his intention to grant the city's motions, and on May 26, 1988, he entered such an order. On August 1, 1988, the trial court denied plaintiff's motion for reconsideration, in which it argued that *Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 528 N.E.2d 978, decided while this case was pending, renders the ordinance unconstitutional as applied to online database searches. This appeal followed.

The transaction tax ordinance provides in pertinent part as follows:

"There is hereby imposed and shall immediately accrue and be collected a tax, *** on *** [t]tansactions consummated in the City of Chicago involving the lease or rental of any personal property ***.

\* \* \*

The ultimate incidence of and liability for payment of such

tax shall be borne by the lessee.

\* \* \*

\*\*\* [T]he lease or rental of any personal property shall include but not be limited to leased time on equipment not otherwise itself rented, such as leased time for use of calculators, computers, computer software \*\*\*, whether said leased time is fully or partially utilized. This includes but is not limited to the usage of a computer under a time-share agreement." (Chicago Municipal Code §200.1—2A.)

Ruling No. 9 interprets this ordinance as authorizing the collection of a transaction tax on "all lease or rental charges associated with the usage of the computer and its software in the City of Chicago." The ruling also provides that "[s]eparately stated optional charges not for the use of the computer, its software or other personal property used in the city, shall not be subject to the Chicago Transaction Tax. An example would be separately stated maintenance charges which are optional."

In ruling in favor of the city, the trial judge stated as follows:

"[T]he court is of the opinion that the [c]ity's analysis is correct when it asserts that the term leased time with reference to the equipment is a description of a lease without possession where use is charged. Hence, the conclusion that can properly be drawn [is] that a lease charge may be either a flat fee or can vary with time. The charges made by Mead are for the use of its computer databases for connect and search charges. .

There is a connection or inter-relation between connect time and searches. A search requires connect time and therefore both become part of the total charge made to the subscriber."

Plaintiff does not dispute the city's right to impose the transaction tax on "connect time," defined by Mead as "each unit of time that [s]ubscriber is in contact with MDC's central computer, beginning with the transmission of an identification number and ending when connection with the computer is terminated." Plaintiff does object to the city's collection of the tax on charges made for online database searches, defined as "each execution of a command by [s]ubscriber that requests information to be located or retrieved from a file." Search charges are a flat fee for each request for information from Mead's database without reference to the amount of time involved, and connect time is a charge based solely on the time customers are connected to Mead's central computer. Plaintiff emphasizes that the two charges are billed separately. It asserts that the ordinance authorizes a tax on charges for leased time on a computer, and not, as the

city suggests, on charges for the use of a computer.

The parties dispute whether a time-sharing agreement is involved here. Plaintiff claims that even if this is a time-sharing agreement, the tax cannot be collected on search charges. It maintains that the ordinance taxes charges made for time-sharing agreements "only to the extent that those charges are attributable to leased time." The city contends that this is a time-sharing agreement and that the tax is proper because the ordinance applies to any "usage of a computer under a time-sharing agreement."

Time-sharing agreements have been defined as follows:

> "A time-sharing computer network consists of a central computer, which stores programs and performs all calculations, and user terminals. Individual users access the central computer through telephone connections and terminals located in their own offices. Typically, users pay some monthly fee for access privileges plus an hourly rate for time actually spent utilizing the central computer." *Flip Mortgage Corp. v. McElhone* (4th Cir. 1988), 841 F.2d 531, 533 n.1.

> "A time-sharing company is one that installs a terminal facility in the customer's business location; the terminal is connected to the time-sharing company's computer system via telephone communication lines. The end-user can then time-share the computer system by means of the remote terminal for a fee." *Telex Corp. v. International Business Machines Corp.* (N.D. Okla. 1973), 367 F. Supp. 258, 273, *aff'd in part, rev'd on other grounds* (10th Cir. 1975), 510 F.2d 894.

> "One witness testified, 'Time sharing is a system of using a computer whereby a user has a terminal of some capability, some small, some large, and the terminal is hooked to the computer via telephone line at some remote distance, and this allows the user to access the computer through the telephone lines and through his terminal.' " (*Greyhound Computer Corp. v. International Business Machines Corp.* (9th Cir. 1977), 559 F.2d 488, 494 n.9.)

Plaintiff asserts that the ordinance does not define time-sharing agreements, that the definition is not self-evident, and that this court cannot rely on definitions from earlier decisions, because databases are continually developing and their functions are becoming more complex. The trial court made no finding on this question, nor is it necessary for us to do so in order to decide this case.

■ The city argues that the Department of Revenue's interpretation of the ordinance is to be considered persuasive authority unless it

is "clearly erroneous, arbitrary, or unreasonable." (*Mitee Racers, Inc. v. Carnival-Amusement Safety Board* (1987), 152 Ill. App. 3d 812, 816-17, 504 N.E.2d 1298.) Additionally, the city notes that according to Mead, usage of the computer system is composed of both access to the system and the operations performed by the time-sharing user after the system is accessed. The city maintains that accessing Mead's system "without proceeding to use the system to search for and retrieve information is of no practical value and a waste of resources." Thus, it urges, access and usage of a computer system is "a single, unitary transaction."

Although the concept of "leased time on equipment not otherwise itself rented" is not well defined, it could reasonably include usage of a computer and its software, and thus Rule No. 9 is not "erroneous, arbitrary or unreasonable." Nor is the trial judge's ruling that "the charges made by Mead are for the use of its computer databases for connect and search charges." Plaintiff cites no authority for its contention that the tax cannot be applied to charges that are not time based, and we decline to so hold.

Plaintiff next argues that charges for searches are fees for a service rendered by Mead, and a tax on that service is a tax on occupations, prohibited by article VII, section 6(e), of the Illinois Constitution. Alternatively, plaintiff asserts that under *Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 528 N.E.2d 978, it is not necessary to find that searches are services to find that the tax is one on occupations.

In *Webster v. City of Chicago* (1985), 132 Ill. App. 3d 666, 478 N.E. 2d 446, the court rejected plaintiffs' argument that the transaction tax violates article VII, section 6, of the Illinois Constitution, which provides in part as follows:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power *** to tax ***.
>
> * * *
>
> A home rule unit shall have only the power that the General Assembly may provide by law *** to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." (Ill. Const. 1970, art. VII, §§6(a), (e).)

Plaintiffs contended that the transaction tax is prohibited by section 6(e), because the leasing of personal property is a service and any tax on services is an impermissible tax on occupations. *Webster*, 132 Ill. App. 3d at 668.

■ The *Webster* court noted that the supreme court has defined "services" as "all 'sales' transactions other than sales of tangible property," and that, during the constitutional convention debates on section 6(e), the delegates indicated that a tax on service providers, such as doctors, lawyers, repairmen and beauticians, was prohibited. (132 Ill. App. 3d at 668.) The court held that the transaction tax is "akin" to a use tax, because the consumer is paying for the use and temporary transfer of possession of tangible property, and therefore, is not an invalid service tax. 132 Ill. App. 3d at 669.

The court then addressed the plaintiffs' contention that, even if leasing were not held to be a service, the tax was invalid, because the practical operation of the tax was to tax the occupation of leasing. The court noted that the lessor was required to collect the tax and remit it to the city, and ruled that this factor did not make the transaction tax a tax on occupations, as the tax was imposed on the lessee, and it provided for fines and penalties against the lessee for failing to pay the tax. "Furthermore, nothing in the history of 6(e) evidences an intent to prevent a tax on temporary transfers of personal property. The [transaction tax] is not a tax on occupations." 132 Ill. App. 3d at 669.

In *Webster*, plaintiff lessees were engaged in renting automobiles and formal clothing. Courts have also ruled that the transaction tax is not an occupation tax when applied to drivers of leased taxicabs (*Wellington v. City of Chicago* (1986), 144 Ill. App. 3d 774, 494 N.E.2d 603) and self-service laundromats (*Katz v. City of Chicago* (1988), 177 Ill. App. 3d 305, 532 N.E.2d 322). However, the supreme court has found other taxes to be taxes on occupations, such as a service tax (*Commercial National Bank v. City of Chicago* (1982), 89 Ill. 2d 45, 432 N.E.2d 227) and a municipal utility tax (*Waukegan Community Unit School District No. 60 v. City of Waukegan* (1983), 95 Ill. 2d 244, 447 N.E.2d 345). In each of those cases, the court first found that the sale of service taxes involved were prohibited by section 6(e). The court applied the practical operation and effect test to prevent an evasion of the constitutional prohibition against taxes on occupations by the taxing body's use of "magic words."

" '[T]he practical operation of the entire ordinance, not just the simple declaration that the tax is on the purchaser, must be judged against the intent expressed by the delegates to the constitutional convention in determining whether the tax imposed by the ordinance falls within the proscription of section 6(e) of article VII.' [Citation.] 'The declaration that the tax *** is on the purchaser is *** not consistent with the constitutional

restriction on taxes upon occupations but is an attempt to erode, diminish or evade the intent expressed in the constitutional convention.' [Citation.] Viewed in their entirety the *** taxes at issue are, in practical operation, attempts to impose a tax upon [services] *** provided to the general public." (*Waukegan School*, 95 Ill. 2d at 254-55.)

The supreme court has further stated that the practical-effect analysis is not appropriate when considering taxes that are not prohibited by section 6(e). *Illinois Gasoline Dealers Association v. City of Chicago* (1988), 119 Ill. 2d 391, 400, 519 N.E.2d 447.

Plaintiff claims that the supreme court changed the test to determine whether a tax was prohibited by section 6(e) in *Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 528 N.E.2d 978. In that case, the court struck down an amendment to the Chicago amusement tax which added health and racquetball clubs to the list of "amusements" for purposes of the tax, holding that it was an occupation tax, and stating:

"[I]n order to abide by [the constitutional restriction on occupation taxes] we must look to this ordinance's practical operation and effect rather than only to a facial declaration contained therein. In doing so it becomes apparent that, although the tax may ostensibly fall on individuals receiving the clubs' services, the tax truly is an 'occupation' tax within the meaning of 6(e). The clubs are not only responsible for collecting and remitting the tax to the city, but are also responsible for paying the tax to the city *regardless* of whether their patrons fail or refuse to remit the tax. Additionally, the health clubs are subject to some very substantial penalties for any delays in submitting the tax payments." (Emphasis in original.) (124 Ill. 2d at 10.)

The court noted that it found the "same types of considerations" persuasive in determining that other taxes were *de facto* occupation taxes. (124 Ill. 2d at 10.) The court continued:

"The ordinance *** undoubtedly imposes numerous nonoccupational taxes, taxing activities which may in fact be offered by those engaged in a 'hobby, diversion or occasional fund-raising enterprise,' as defendants suggest. However, by defining 'amusement' to include 'racquetball or health clubs,' and by further establishing a tax on those clubs' membership fees, the city has gone far beyond merely taxing particular activities [citation], and has imposed a tax unique to those types of commercial enterprises. Realistically viewed, it is clear that a tax

on membership fees on health and racquetball club memberships is a tax on those occupations." 124 Ill. 2d at 11-12.

The city had also argued that the tax was authorized by section 11—42—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—5), which provides that municipalities may tax amusements, but the court rejected the city's contention that charges for "amusements" could be segregated from charges for services, such as nutritional instructions and diet counseling, provided by clubs, saying:

"The plain language of the amended ordinance *** does not distinguish between service and nonservice components of the entities remitting the tax, and there is nothing in the amended ordinance to support [the city's] 'theory' that the tax applies to anything less than the gross receipts of health and racquetball clubs. Moreover, it seems simply impossible to fully segregate health club membership into amusement and nonamusement components." *Picur*, 124 Ill. 2d at 15.

Plaintiff maintains that the *Picur* court applied the practical-effect analysis to determine whether a tax violated section 6(e), and that, therefore, "a tax may now qualify as a 'tax on occupations' even if it is not a 'tax on services.' "

The city argues that Lexis/Nexis is a self-serve business and that Mead does not provide services to its lessees. It suggests that if Mead provided personnel to fill search requests and other inquiries submitted by its subscribers, then it would be providing a service. The city contends that plaintiff "is doing nothing more than leasing equipment and the time to use it," and is not purchasing a service. The city also maintains that an occupational tax is a tax either intended and designed to regulate or control a particular occupation or designed to be levied on the privilege of engaging in a particular occupation (*Forsberg v. City of Chicago* (1986), 151 Ill. App. 3d 354, 502 N.E.2d 283) and that such is not the case here.

The city does not address plaintiff's contention that *Picur* changed the standard for determining whether a tax is a tax on occupations. The trial court here held that *Picur* "may be interpreted as being consistent with prior case law effectively limiting the application of the 'practical operation and effect' test to 'service taxes' alone." We agree.

In *Picur*, the court did apply the practical operation and effect test, but it did not state whether it was doing so because the tax was one on services, or if it was applying the test regardless of whether the tax was on services. In its decision the court referred to the ser-

vices provided by health clubs, and it is reasonable to consider what health clubs provide as services. Thus, it is probable that the court assumed that the tax was on services. Because the supreme court did not expressly overrule the previous cases holding that the practical operation and effect test is applied only after a determination that a challenged tax is a service tax (*Illinois Gasoline Dealers Association v. City of Chicago* (1988), 119 Ill. 2d 391, 519 N.E.2d 447), and because *Picur* can be read as consistent with such holdings, we decline plaintiff's invitation to recognize a new standard.

We hold that Mead does not perform a service by providing its subscribers with databases which the subscriber may use to do legal research. Because the transaction tax is not a service tax, it is not an impermissible tax on occupations.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DiVITO and EGAN, JJ., concur.