NATIONAL PRIDE OF CHICAGO, INC., Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—88—3133

Opinion filed October 5, 1990.—Rehearing denied November 19, 1990.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Richard C. Clark, Peter E. Kanaris, Kevin J. Young, and Edward M. Kay, of counsel), for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and L. Anita Richardson, Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff brought suit for declaratory relief and injunction against defendants, contending that the Chicago transaction tax should not apply to self-service car wash facilities such as those plaintiff operates. The suit sought a determination by statutory construction that department of revenue ruling 8 is an erroneous interpretation of the Chicago Transaction Tax Ordinance (Chicago Municipal Code, §200.1—2A5(b) (1984)) and that the imposition of the transaction tax on plaintiff's self-service car wash facilities violated the uniform tax application requirement of the Illinois Constitution (Ill. Const. 1970, art. IX, §2), exceeded the city's constitutional home rule authority because it is the levy of an occupation tax on one segment of the car wash industry (Ill. Const. 1970, art. VII, §6(c)), and violated the equal protection clause of the United States Constitution (U.S. Const., amend. XIV, §1) in treating plaintiff's car wash business differently than competitor car wash facilities.

Cross-motions for summary judgment were filed. The trial court granted defendant's motion, entering judgment for defendants and against plaintiff on all counts. The court denied plaintiff's summary judgment motion. Thereafter, the trial court denied plaintiff's subsequent motion to reconsider, and plaintiff appealed.

Plaintiff raises the following issues on appeal: (1) whether plaintiff's self-service car wash business constitutes a lease of personal property and as such is a transaction subject to taxation under the city ordinance; (2) whether department of revenue ruling No. 8, which imposes a transaction tax on self-service car wash facilities but exempts automatic or tunnel car washes from the tax, violates the uniformity clause of the Illinois Constitution; (3) whether the department of revenue in treating self-service car washes as businesses subject to the transaction tax while exempting automatic and tunnel car washes

from the tax has imposed an unreasonable and arbitrary classification which violates the equal protection clause of the fourteenth amendment of the U.S. Constitution; and (4) whether the transaction tax as applied to plaintiff is an unconstitutional tax on an occupation or service in violation of article VII, section 6(e), of the Illinois Constitution.

In challenging the propriety of revenue ruling 8, plaintiff's suit against the defendant alleges that the application of the transaction tax to self-service car wash facilities was not authorized by the ordinance. Plaintiff alleged in its complaint that the distinction drawn by the department of revenue (Department) between self-service car wash facilities and the tunnel and automatic car wash facilities unfairly and unlawfully discriminated against plaintiff's type of facilities. Plaintiff sought a preliminary injunction against defendants to prevent the assessment and collection of the tax on its business earnings.

Defendant filed a general denial of plaintiff's allegations and denied that plaintiff was entitled to the relief sought. Cross-motions for summary judgment were then filed.

Plaintiff argued, in addition to the allegations of the complaint, that the distinction made by the Department for purposes of taxing coin-operated self-service car washes while exempting automatic and tunnel car washes from the tax was arbitrary and inconsistent with prior ruling 7 of the department of revenue.

Plaintiff also claimed that the 6%-per-cycle increase could not be passed along to the consumer and would result in a 62% decrease in plaintiff's revenues and that the disparate application of the transaction tax gave other car wash businesses an unwarranted and inappropriate commercial advantage over plaintiff.

Defendants argued in response that the nature of plaintiff's operation constituted the lease or rental of personal property which is an activity specifically subject to the transaction tax and that as such the tax does not violate constitutional prohibitions nor is it arbitrarily imposed.

In granting defendants' motion for summary judgment, and denying plaintiff's summary judgment motion, the court issued a memorandum decision of its ruling and enunciated certain express findings, specifically:

>(1) There is a real and substantial difference between plaintiff's operation, which provides customers with exclusive use of equipment for a fixed period of time and at a fixed price within the definition of renting, whereas plaintiff's competitors provided a service. (2) There is no violation of the constitutional requirements of equal protection and uniformity of statutory

application. (3) The city has the power to enact the transaction tax and it cannot be judicially stricken. Any change requires city council action. (4) The tax classification imposed by the department of revenue is premised upon a rational and reasonable basis for a proper legislative objective. (5) Plaintiff has not met its burden of proof in challenging the tax. (6) The transaction tax on lease transactions is not a tax on occupations. (7) The court rejected the plaintiff's arguments in opposition to ruling 8 and found the defendants' arguments in support of the tax to be persuasive.

Plaintiff moved for reconsideration of the order granting summary judgment in favor of the defendants. Defendants moved for sanctions and reasonable attorneys' fees. The trial court denied both motions and plaintiff appealed.

The parties agree that in the Chicago metropolitan area there are three general types of commercial car wash facilities, *i.e.*, the coin-operated self-service car wash, the automatic car wash and the tunnel car wash. Basic to a determination of the issues raised is a discussion of the similarities and differences in these three car wash systems.

The customer of the *automatic car wash* inserts money into a meter or pays an attendant to activate machinery. He then drives his car into a stall, where it remains stationary while car-washing machinery moves around the car. The customer, who has remained in the car, then drives the car out of the stall and dries his own car.

The *tunnel car wash* customer pays the cashier a fee and his car is connected to equipment that pulls it through a tunnel-shaped facility where it is washed by machines. Some tunnel facilities have attendants who dry the car at the end of the wash process while others have air-drying blowers as part of the wash cycle. The customer may, but need not, remain in the car during the wash process.

The *self-service car wash* customer drives his car into a bay, inserts coins into a meter which activates washing equipment for a predetermined period of time. The customer directs a high pressure water spray from a wand secured to a hose which is connected by piping running to a pump, electrical system, hot water supply, soap dispensers and other installations in an equipment room. The customer does not operate the equipment in the equipment room but merely handles the wand and directs the water spray which washes the car. Attendants or managers are on duty to instruct the customer in the use of the service.

Of the three, only the self-service customer provides hands-on control of the wand which directs the water to the vehicle, while the

other methods of car wash systems function with automatic machines and do not require customer participation except to drive the car to a place in close proximity to the automatic machines. The cost of each is generally comparable to the others. The plaintiff owns and operates seven coin-operated self-service car wash facilities in the City of Chicago and the greater metropolitan area.

Initially we consider the origin and development of the challenged transaction tax ordinance and its application here.

The City of Chicago derives its power to tax from the home rule provisions of the Illinois Constitution (Ill. Const. 1970, art. VII, §§6(a), (e)), which also provides that these powers shall be liberally construed. The Chicago Transaction Tax Ordinance was enacted in 1975 and in the exercise of the city's home rule power imposed a tax on the lease or rental of certain personal property. Personal property was originally defined in the ordinance by an extensive but not exclusive listing of items, including "leased time on equipment not otherwise itself rented." Chicago Municipal Code §§200.1, 200.1—2A5(b) (1975).

The ordinance was subsequently amended and as amended on March 7, 1984, provided in pertinent part that the tax be assessed on:

"A. Transactions consummated in the City of Chicago involving the lease or rental of any personal property, valued in money, whether received in money or otherwise by an individual person, domestic or foreign association, company, or corporation or certificates of interest in a business conducted by a trustee or trustees, made after the 1st day of January, 1974, whether made upon or shown by the books of the person, association, company, corporation, or trustee or by any paper or agreement or memorandum or other evidence of such lease or rental, when delivery or use also takes place in the City of Chicago.

1. The tax imposed by this Section 200.1—2A shall be six percent of such lease or rental price." (Chicago Municipal Code §200.1—2A (1984).)

The ordinance further provides that the liability for payment of the tax is on the lessee while the duty to remit the tax to the city is on the lessor. The ordinance requires that the tax shall be paid by the purchase of tax stamps from the department of revenue, that the stamps be placed on the formal lease or rental document, or on a memorandum of such lease or rental document or where the transaction is shown only upon the books of the entity involved in the transaction then the stamps shall be affixed to the books. The ordinance

requires that every formal lease or rental agreement or memorandum contain date, names of lessor and lessee, a description of the personal property to which it relates and shall bear an identification number on its face, to be entered and recorded in a book of account required to be kept by section 200.1—6 of chapter 200.1 of the Municipal Code. Chicago Municipal Code §200.1—2 (1984).

The amended ordinance then defines personal property as property falling within the eight general categories of (1) motor and other vehicles; (2) construction and demolition equipment; (3) road construction and maintenance equipment; (4) household and office equipment; (5) clothing; (6) office and computing equipment; (7) "such miscellaneous equipment as musical instruments"; and (8) leased time on equipment not otherwise itself rented. (Chicago Municipal Code §§200.1—2A5(a), (b) (1984).) The ordinance describes specific examples of property included in each category but states that the ordinance is not limited to those items enumerated.

By amendment to the transaction tax ordinance adopted on March 7, 1984, the following language was added along with other changes not pertinent to this appeal:

"Nor shall this tax apply to any lease or rental upon which the imposition of the tax would violate the Constitution of the United States or the State of Illinois." Chicago Municipal Code §200.1—2A.2 (1984).

The fourteenth amendment to the United States Constitution provides that no State shall deny equal protection of the law to any person within its jurisdiction (U.S. Const., amend. XIV, §1), while the Illinois Constitution provides that "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly" (Ill. Const. 1970, art. IX, §2). Section 6 of article VII of the Illinois Constitution prohibits the home rule unit from the imposition of a tax on services or occupations. Ill. Const. 1970, art. VII, §6.

■■ This transaction tax has been judicially tested and found to be constitutional and to be neither an impermissible tax on services nor a tax on occupations. *Webster v. City of Chicago* (1985), 132 Ill. App. 3d 666, 669, 478 N.E.2d 446 (transaction tax on rental cars and formal clothing); *Meites v. City of Chicago* (1989), 184 Ill. App. 3d 887, 892, 540 N.E.2d 973 (transaction tax on online database searches); *Katz v. City of Chicago* (1988), 177 Ill. App. 3d 305, 311, 532 N.E.2d 322 (transaction tax on coin-operated laundry facilities); *Wellington v. City of Chicago* (1986), 144 Ill. App. 3d 774, 779, 494 N.E.2d 603 (transaction tax on leased cabs); *Williams v. City of Chicago* (1977), 66 Ill. 2d

423, 432, 362 N.E.2d 1030 (transaction tax on leased cars and real estate transfers).

By the express terms of the transaction tax ordinance the city has the power to delegate administration of the ordinance to the department of revenue. (Chicago Municipal Code §200.1—3 (amend. 1981, amend. by deletion 1984).) By city ordinance adopted January 1, 1984, the city established an executive department of municipal government known as the department of revenue to administer and enforce every tax ordinance then current and subsequently to be enacted by the city. (Chicago Municipal Code §§10, 10—1 (1984).) The department of revenue was given the power "to make and enforce such reasonable rules and regulations as may be necessary to effectively administer" the city tax ordinances. Chicago Municipal Code, §§10, 10—4(a), (b) (1984).

On January 23, 1985, the city council amended the Chicago Municipal Code by adding the Uniform Revenue Procedures Ordinance (Chicago Municipal Code §10.1 (1985)), which provided in pertinent part at subsection 10.1—5.A, "As to any tax ordinance, the Director is empowered to adopt, promulgate and to enforce, rules and regulations relating to any matter or thing pertaining to the administration and enforcement of the provisions of such tax ordinance ***." Thereafter, on February 3, 1987, the city council reenacted and ratified the Uniform Revenue Procedures Ordinance in its entirety. The department of revenue thus was empowered to promulgate rules and regulations pertaining to the administration of the transaction tax.

On April 7, 1985, the director of the department of revenue issued revenue ruling No. 7, which provided in pertinent part:

"Section 6. A transaction involving the transfer of the possession or use of personal property shall be taxable even though only a small portion of the transaction involves the transfer of the possession or use of such property. However, the amount subject to tax shall be determined as provided in this ruling. If the transfer of personal property is incidental to the service provided, in that the use of the personal property has little or no value without the accompanying service and the cost of the personal property is incidental to the price charged for the total transaction, then no lease or rental shall be deemed to have occurred and no portion of the price shall be taxable. Furthermore, if the lessor or his agent furnishes the services of operating the personal property for the lessee so that the lessor or his agent solely uses the property and remains in total possession and control of said property, then no

lease or rental shall be deemed to have occurred and no portion of the price shall be taxable. (However, the person who operates a terminal to use a computer is considered the user of that computer, and such use is subject to this tax, even though the physical possession of the computer remains in the hands of the computer owner.) The location of the terminal used by the operator shall be deemed the location of the use of the computer by such operator for purposes of this tax."

On February 1, 1987, the director of the department of revenue issued revenue ruling 8, which extended the activities which are subject to a transaction tax to:

"The use of a clothes washing or car washing machine, where the possession does not transfer but where a charge is made for the period of use of the machine by the user. This applies even for coin-operated machines. However, automatic car washing machines operated and controlled by the owner or manager of such machines, and where the customers only drive their automobiles into and out of such machines, are not subject to this tax. See Chicago Transaction Tax Ruling No. 7, Section 6."

Following the issuance of ruling 8, the department of revenue imposed and attempted to collect the transaction tax from plaintiff based on its determination that, by the definitions of ruling 8, self-service car wash facilities are subject to the transaction tax. This litigation followed and is a challenge to the propriety of ruling 8.

First, we consider whether plaintiff's self-service car wash business constitutes a lease of personal property and as such is a transaction subject to the city ordinance. The transactions taxed under the Chicago Transaction Tax Ordinance are those "[t]ransactions consummated in the City of Chicago involving the lease or rental of any personal property." Chicago Municipal Code §200.1—2A (1984).

Plaintiff argues that the use of its car wash facility does not involve the leasing of personal property contemplated by the Chicago Transaction Tax Ordinance. Defendants, however, argue that use of the wand through which the water, soap, and other cleaning agents are pumped when customers deposit coins and with which they direct the water to wash their cars constitutes the leasing of personal property.

Plaintiff contends that in ruling No. 7, issued in 1985, the department of revenue clarified the definition of personal property which, when leased, is taxable to the customer. The ruling stated in part:

"If the transfer of personal property is incidental to the service provided, in that the use of the personal property has little or

no value without the accompanying service and the cost of the personal property is incidental to the price charged for the total transaction, then no lease or rental shall be deemed to have occurred and no portion of the price shall be taxable." Chicago Department of Revenue Ruling No. 7 (1985).

In applying the criteria of ruling 7 to the National Pride operation, plaintiff contends that the wand used by its customers to direct the water spray has little or no value without the accompanying water service supply, that its cost is incidental to the price charged for the total transaction and therefore by application of ruling 7 the use of its facilities must be found to be nontaxable as a lease transaction under the city ordinance.

All three car wash systems provide a bay, stall or tunnel, soap, cleaning agents, water, wax, pump, piping and electricity. Their operations differ only in the fact that the automatic washing machinery, with brushes and other equipment attached, is used in tunnel and automatic car washes while the hose, wand, and hand brushes are used by the customer in plaintiff's facilities. Since the machinery in the competitor facilities is automatic, it is activated by an attendant who pushes a button or buttons and, except for some facilities which offer the additional service of vacuuming or cleaning the interior and/or hand drying the exterior, the extent of the service rendered by them involves pushing buttons to activate the system. Plaintiff's customer holds the wand, directs the water spray and, if needed, uses available brushes to scrub his vehicle by hand. The customer, rather than an attendant, pushes the button to activate the water supply. The wand and hose by themselves have no practical value to the customer without the underlying water supply and equipment, nor would they have a use to the customer if removed from the premises.

We next consider the application of the transaction tax to the business operations of specific taxpayers. Plaintiff contends that department of revenue ruling 8, which declares that self-service, coin-operated car-washing machines are subject to the tax while exempting from the tax automatic car-washing machines operated and controlled by the owner, violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2), the equal protection clause of the U.S. Constitution (U.S. Const., art. XIV, §1), and that the department has created an arbitrary and unreasonable classification in assessing the tax against National Pride.

The defendant argues and the trial court found that the tax classification of revenue ruling 8 is premised upon clear differences between plaintiff's operation and those of its competitors in that plain-

tiff is engaged in the lease or rental of equipment while its competitors provide a service and for that reason there exists a real and substantial difference between them which permits the assessment of the tax on plaintiff's operation and the exemption from the tax for plaintiff's competitors.

In explaining its rationale for finding no violation of equal protection and uniformity constitutional requirements here (Ill. Const. 1970, art. IX, §2), the trial court referred to the analysis of the *Searle* court (*Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 468, 512 N.E.2d 1240), which held that an appropriate test is that (1) the classification be based on a real and substantial difference between those taxed and those not taxed and (2) the classification must bear a reasonable relationship to the legislative objective or to public policy. The *Searle* court rejected the argument that the party challenging a tax classification had the burden of negating every conceivable basis which would support the classification. We note, however, that in reaching its final conclusion, the trial court here found that the plaintiff had not met its burden, *i.e.*, "to negate every conceivable basis which might support" the classification. Thus, the trial court did not apply the *Searle* test to the challenged classification, but instead found that plaintiff had not met the standards of the rejected test.

Here the court found there was a marked distinction between the operations of the plaintiff and that of its commercial competition. The court concluded that plaintiff's customers rented equipment, whereas plaintiff's competition rendered a service to their customers.

The court cited the Arizona case of *State Tax Commissioners v. Peck* (1970), 106 Ariz. 394, 476 P.2d 849, solely for the definition of the term "renting" as applied to coin-operated washing machines and dryers and automatic car-washing equipment, all operated by customers. The *Peck* court held that, within the meaning of the Arizona statute, where the customer has exclusive use of the equipment on owner's premises for a fixed period of time for a fixed amount of money, such exclusive use and control comes within the meaning of the term "renting" in the statute. However, the Arizona statute in question differs from the Chicago transaction tax. The Arizona statute provided that a tax of 2% be paid on gross proceeds of sales or gross income from the business of persons engaging in, among others, the "[s]ales of tangible personal property to be leased or rented to a person engaged in the business of leasing or renting such tangible personal property for a consideration shall be deemed to be resale sales." Ariz. Rev. Stat. Ann., §42—1314A2 (1980).

We find the Arizona case has no application here for the reasons that the *Peck* controversy concerned the imposition of a tax on the *sale* of equipment to one who is in the business of leasing such property for a consideration, and the tax is imposed on the operator of the business and not on the ultimate customer who uses the coin-operated equipment, as in our case.

In addition, the Arizona court does not differentiate or discuss the application or nonapplication of the challenged tax on the various kinds of car wash facilities as exist in the present case. The statutory language construed in *Peck* differs substantially from the language of the Chicago ordinance and ruling 8.

We agree with the trial court's statement that the city had the power to enact the transaction tax ordinance and that the ordinance may not be judicially stricken but requires action by the city council to change its provisions. Our inquiry here focuses on the determinations made by the department of revenue in its administrative ruling 8 and the validity of the trial court's conclusion that the tax classification defined in that ruling is premised on real and substantial differences in car wash operations which would justify disparate tax treatment among competitors.

The trial court relied on the holding in *Katz v. City of Chicago* (1988), 177 Ill. App. 3d 305, 311-12, 532 N.E.2d 322, in finding that ruling 8 was a proper exercise of the administrative authority given to the department of revenue. In *Katz*, the court considered the argument, that in addition to using the owner's washing machine the customer also used plaintiff's real property, furnishings, and auxiliary facilities such as plumbing, fixtures, electricity and areas for waiting and parking and therefore the use of the machine was incidental to the laundromat service. The *Katz* court noted that the original transaction tax ordinance enacted in 1974 provided that taxable personal property included washers and dryers, and that in 1981 the amendment to the ordinance deleted washers and dryers from the list of examples of personal property. In contrast we note that self-service car washes were never specifically listed among those examples of personal property transactions subject to the tax.

The *Katz* court cited as authority for its ultimate conclusion of taxability the case of *Springfield Hotel-Motel Association v. City of Springfield* (1983), 119 Ill. App. 3d 753, 457 N.E.2d 1017. In *Springfield*, the court found a hotel tax to be valid and that it was not an invalid tax on services. The court reasoned that the maid services, television, telephone and other services were incidental to the rental of the hotel room. The *Katz* court concluded that a similar result was re-

quired as to the use of laundromat facilities. However, we agree with the distinction drawn by plaintiff between the washing machine used by the *Katz* customer and the wand used by the National Pride customer. The washing machine, if removed from the owner's premises, still has a practical use, whereas plaintiff's wand has no use to the customer if removed from the underlying equipment.

■ Legislative enactments are presumed to be constitutional. This rule applies equally to statutes adopted by the General Assembly and to ordinances adopted by the City of Chicago in the exercise of its home rule power. (*O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 266, 408 N.E.2d 204.) The language of the act or ordinance should be liberally construed to achieve its legislative purpose with reasonable doubts resolved in favor of its validity. (*O'Connor*, 81 Ill. 2d at 266.) The agency charged with administration of the statute or ordinance has the authority to adopt rules interpreting the legislation for the guidance of those persons involved in the assessment procedure and to assure a uniform application of the statute or ordinance. *O'Connor*, 81 Ill. 2d at 266.

■ While administrative rules interpreting an act or ordinance are given substantial deference as an informed source of guidance as to legislative intent, they are not binding on the court in its determination of validity of the ruling except to the extent that they follow the statute. *Katz*, 177 Ill. App. 3d at 311; *Canteen Corp. v. Department of Revenue* (1988), 123 Ill. 2d 95, 104-05, 525 N.E.2d 73; *DuMont Ventilating Co. v. Department of Revenue* (1978), 73 Ill. 2d 243, 247, 383 N.E.2d 197; *Farm Progress Show Concessions v. Department of Revenue* (1980), 83 Ill. App. 3d 228, 233, 403 N.E.2d 1242.

Administrative rulings can neither limit, enlarge nor amend the scope of the statute beyond the clear import of the legislative language used (*Canteen*, 123 Ill. 2d at 104-05; *Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 11, 528 N.E.2d 978; *Du-Mont*, 73 Ill. 2d at 247-48) and courts are not bound by them except to the extent that they fall within the parameters of the statute or ordinance which the ruling purports to interpret.

■ In determining the scope of the ordinance, the court must determine legislative intent, beginning with the language of the ordinance itself (*Canteen*, 123 Ill. 2d at 104), and must then consider the purposes to be attained by the ordinance. *Canteen*, 123 Ill. 2d at 104.

■ It is clear that the purpose of the ordinance here is to impose a tax on transactions consummated in the City of Chicago involving (a) the lease or rental of personal property, and (b) transfers of title to or possession of real property. (Chicago Municipal Code §200.1—2 *et*

*seq.* (1984).) The ordinance definition of personal property subject to the tax as used in section 200.1—2A includes, but is not limited to: (1) motor and other vehicles; (2) construction and demolition equipment; (3) road construction and maintenance equipment; (4) household and office equipment; (5) clothing; (6) office and computing equipment; (7) "such miscellaneous equipment as musical instruments" (Chicago Municipal Code §200.1—2A5(a) (1984)); and (8) to "leased time on equipment not otherwise itself rented, such as" a specified variety of office and computer equipment "whether [the] leased time is fully or partially utilized" (Chicago Municipal Code §200.1—2A5(b) (1984)).

In *Williams* (66 Ill. 2d 423), the supreme court examined the statutory language of the transaction tax ordinance to determine legislative intent and held:

> "Viewed in its entirety the ordinance, in our judgment, does not express an intention to tax lease or rental transactions involving *any* and *all* personal property; instead, it has as its objective the taxation of transactions involving the lease or rental of those types of personal property defined in subsection 5. We find no inconsistency or ambiguity in these provisions and do not concur with the argument that the definition contained in subsection 5 is somehow contrary to the intent and object of the tax or that it reflects a mistaken or irrational omission which creates an unreasonable and arbitrary classification of transactions subject to tax." (Emphasis added.) 66 Ill. 2d 434-35.

In comparing plaintiff's coin-operated self-service car wash operation to the subsection 5 criteria of the ordinance, we conclude that the customer's use of the wand, hoses and hand brushes for a fixed price, at a fixed location and for a fixed amount of time does not constitute the lease or rental of (1) a motor or other vehicle, (2) construction or demolition equipment, (3) road construction and maintenance equipment, (4) household and office equipment, (5) clothing, (6) office and computing equipment, or (7) miscellaneous equipment such as musical instruments.

When testing the National Pride car-washing operation against the criterion "leased time on equipment not otherwise itself rented," we find that all of the ordinance examples are office equipment, *i.e.*, calculators, computers, data processing equipment, tabulating equipment, accounting equipment, copying machines, duplicating machines or addressing machines, and bear not even a remote resemblance to the wand, hose and brushes offered by plaintiff for its customers' use, nor does plaintiff's operation fit the category of "such miscellaneous

equipment as musical instruments." We find, therefore, that the plain language of the statute does not encompass a car-washing operation such as we have in this case.

We next consider the application of the transaction tax to the business operations of specific taxpayers. Plaintiff contends that ruling 8 issued by the department of revenue, which declares that plaintiff's business operation is subject to the tax while exempting its competitors from the transaction tax, violates the uniformity clause of the Illinois Constitution as well as the equal protection clause of the Federal Constitution, and that the Department has created an unreasonable and arbitrary classification in assessing the tax against National Pride. Article IX of the Illinois Constitution provides that "[i]n any law classifying the subjects or objects of nonproperty taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, §2.

■■ While legislative bodies have broad discretion to establish classifications which define objects of taxation, in order to withstand a constitutional challenge the classification must bear a clear relationship to the legislative intent, must be reasonable and must be based on real and substantial differences between those taxed and those not taxed, and shall not be arbitrary. *Satellink of Chicago, Inc. v. City of Chicago* (1988), 168 Ill. App. 3d 689, 523 N.E.2d 13; *Federated Distributors, Inc. v. Johnson* (1988), 125 Ill. 2d 1, 15, 530 N.E.2d 501; *Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 468, 512 N.E.2d 1240.

The *Searle* court described the equal protection clause of the Federal Constitution (U.S. Const. amend. XIV, §1) as a general limitation on the power of State legislative bodies to tax and noted that to a great extent the courts defer to legislative judgment in classifications relating to tax matters (*Searle*, 117 Ill. 2d at 466). The court adds, however, that by contrast the uniformity requirements of the Illinois Constitution impose a specific limitation on that governmental body in the exercise of its taxing power (*Searle*, 117 Ill. 2d at 466-67), which requires that the more rigorous standard of reasonableness in classification be met. *Searle*, 117 Ill. 2d at 467.

The *Searle* court defined the appropriate test to be met in challenging a classification as requiring a showing that the classification was not based on a real and substantial difference between those taxed and those not taxed, and a showing that the classification does not bear a reasonable relationship to the object of the legislation or to public policy. (*Searle*, 117 Ill. 2d 468.) The court rejected as an inappropriate test the proposition that plaintiff was required to negate

every conceivable basis which might support the classification. *Searle,* 117 Ill. 2d at 468.

The trial court here found that ruling 8 interpreted the language of the ordinance of the transaction tax to include the use of a car-washing machine in the category "where the possession of the machine does not transfer, but where a charge is made for the period of use of the machine by the user" even if coin-operated, while exempting "automatic car-washing machines operated and controlled by the owner or manager of such machines, and where the customers only drive their automobiles into and out of such machines" and found that this was a proper exercise of the department of revenue's power to interpret the ordinance. The trial court upheld the city's assessment of the tax against National Pride. We disagree.

The trial court based its conclusion that plaintiff's operation differed from those of its competitors on the facts that the National Pride customer had exclusive use of the equipment for a fixed period of time and for a fixed amount of money, found that exclusive control and use is singular to plaintiff's operation and that the distinction in ruling 8 was both rational and practical. We submit that in competitors' automatic and tunnel car washes, where only one car can be washed in the stall or tunnel at a given time, each wash takes a prescribed period of time and payment is a fixed amount, such operation also meets the definition of exclusive use of the equipment for a fixed period of time for a fixed amount of money.

We find therefore that the disparate treatment between plaintiff's operation and those of its competitors is not based on exclusive use of equipment for a fixed period of time and for a fixed amount of money but rather is based solely on the self-service aspect of plaintiff's operation.

We find that ruling 8 is an expansion of the identified categories of personal property transactions intended to be taxed, which violates the restriction on the department of revenue to interpret but not to expand or amend the ordinance. We also find that ruling 8 makes an artificial distinction between plaintiff and its competitors based solely on the customer's hands-on participation in plaintiff's wash process. For purposes of the city ordinance for transaction taxes we hold that such distinction is arbitrary and is based on no real or substantial difference and that ruling 8 is an improper exercise of the authority of the department of revenue to interpret the ordinance.

We conclude that the department of revenue's disparate tax treatment between plaintiff and its commercial competitors violates the legislative intent of the ordinance and the uniformity requirements of

the Illinois Constitution and that the trial court finding that real and substantial differences exist between them is not supported in the record.

Having determined that the classification of ruling 8 as applied to plaintiff's car wash operation was arbitrary and did not meet the reasonable and substantial differences test of *Searle*, we need not consider the question of whether the tax as applied to plaintiff was a tax improperly applied to an occupation or service.

For all of the foregoing reasons, the judgment of the trial court is reversed.

Reversed.

EGAN and RAKOWSKI, JJ., concur.